UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

---------------------------------X
UNITED STATES OF AMERICA,  :  Criminal No. 21-cr-40 (TNM)
                           :
v.                         :
                           :
PATRICK MCCAUGHEY III,     :
                           :
    Defendant.             :  March 31, 2021
---------------------------------X

## MOTION TO REOPEN DETENTION HEARING
## AND FOR RELEASE ON CONDITIONS

The Defendant Patrick McCaughey III respectfully moves that the February 12, 2021 Detention / Bail hearing be reopened and that he be released on the conditions proposed in a new, even more substantial bail package. In support of this motion, the defendant submits the following:

**I.  *There Is New Information Not Known To The Defendant As Of 2/12/21 That Has Material Bearing On The Issues At Hand.***

"The (detention) hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). There are several important pieces of information that are new to the defendant, not least of which is an interview with alleged victim Daniel Hodges, wherein he provides, *inter alia*, an explanation for his audible screams – a description that materially changes the perception of the weight of the evidence against the defendant as well as the nature and circumstances of the most serious

1

charge in the Superseding Indictment.

### A. Alleged victim Daniel Hodges made statements to local CBS affiliate WUSA9 contradicting the most serious crime in the Superseding Indictment.

#### 1. Officer Hodges was not, in fact, screaming out in pain from an assault by the defendant.

In connection with the February 12, 2021 hearing, the government cited and presented evidence by way of a YouTube link of a video that revealed, to the casual observer, that Officer Hodges was screaming out in apparent agony. https://www.youtube.com/watch?v=qc0U755-uiM; (*Govt's Opposition Brief*, Footnote 1, ECF #11). The government forcefully asserted that Hodges was screaming out in pain as a result of an assault, by Mr. McCaughey, with a plastic defensive police shield. "While being assaulted by Mccaughey, the video shows *Officer Hodges crying out in pain* as Mccaughey pins the officer's body between the stolen riot shield and the lower west terrace door…*Hodges continues screaming in pain* as he cannot move and is helpless to defend himself, as captured in the still shot below." *Id.* at pp.6-7. This video, being the primary evidence presented by the government in connection with the February 12, 2021 hearing, is presumably what the Court relied upon in determining (a) the "nature" of the charges, (b) the "circumstances" of the charges, as well as (c) the "weight of the evidence." 18 U.S.C. 3142(g).

As set forth extensively at the March 12, 2021 status conference, the defendant has essentially received no Rule 16 Discovery to date. Having no such discovery material to examine, counsel for the defendant has been compelled to search the vast expanse of the internet to try to find anything relevant to the defense. In so doing, last week undersigned counsel came across a lengthy interview that alleged victim Daniel Hodges

conducted with WUSA9 CBS network on or about January 14, 2021, regarding his involvement in the events at the Capitol on January 6, 2021. The interview can be found at: https://www.youtube.com/watch?v=FmAx7t2zF0g. In the video, Officer Hodges had an entirely different explanation for his audible screams than that which has been portrayed by the government.

> Beginning at around 4:45, Hodges stated the following:
>
>> I guess I got pinned through the small back and forth we had fighting for, ya know, every inch. And um I had my arm was pinned at that point, I was unable to defend myself. The uh, yeah I think you see someone in the video who um rips my mask off, my gas mask; he's also able to rip away my baton, uh, beat me with it, and um, at that point I was also, ya know, sucking in the OC and CS gas, so uh I was pretty disabled at that point... There's nothing I can do to defend myself at this point so I just started screaming at the top of my lungs for them to give me a way out, get me a line of retreat; thankfully someone was able to do that and I was able to extricate myself.

Officer Hodges' statements reveal that he was not, as the government alleged, "screaming out in pain" from an assault by Mr. McCaughey. The last portion above demonstrates very plainly that Officer Hodges was screaming out not in pain but, rather, he was yelling in order to alert those around him that his arm was trapped, he was defenseless and needed a way out. This revelation undermines the key cog in the government's detention arguments and puts the entire allegation against Mr. McCaughey – that he forcibly assaulted Hodges – in a different and highly questionable light.

Importantly, this Court expressly relied upon the mistaken impression that Officer Hodges was in pain in making its detention decision on February 12. "I believe, *based on the evidence that is currently before me*, he did use the police shield as a weapon against them. Specifically, it appears to me that he pinned Officer Hodges in a doorway,

*causing serious pain to him...*" Transcript, p. 25 (emphasis added). This newly discovered evidence indicating that Hodges was not, in fact, screaming in pain, therefore provides a material change in circumstances warranting reconsideration of the Court's detention order.

Hodges' newly discovered statements also provide support for the defense's claim that, not only did Mr. McCaughey not forcibly assault the officer, but he actually came to Hodges' aid.

### 2. Officer Hodges seemingly also confirmed that it was Mr. McCaughey who answered his calls for help when he implored the crowd to back up to give Hodges room.

Notably, Hodges also revealed to WUSA9, in referencing that he was "thankful" that "someone was able to get him" a "line of retreat," that Mr. McCaughey's imploration of the crowd behind him, who were chanting as they pressed in unison toward the Capitol doorway, to move back so as to give Hodges room to remove himself from the doorway – which efforts are captured by both video and audio from the government's above-referenced YouTube link – are very likely what allowed him to "extricate himself." In this new context provided by Officer Hodges' interview, it is difficult to conclude otherwise.

And it bears repeating that the said video proffered by the government clearly shows that, immediately after McCaughey appeared to get the crowd to ease up enough to allow Officer Hodges a way out, (a) Hodges was able to simply back up of his own volition to free his other arm, and (b) Mr. McCaughey then came to Hodges' aid, first by lowering for him his protective face shield, and thereafter by calling out frantically to

Officer Hodges' cohorts to alert them that he was in need of assistance.[1] The defense assertion, that these were not the actions of someone intent on forcibly assaulting Officer Hodges, is significantly reinforced by the new information from Hodge's WUSA9 interview.

Moreover, Officer Hodges statement that he "started screaming at the top of my lungs for them to give me a way out, get me a line of retreat; thankfully someone was able to do that and I was able to extricate myself," is utterly inconsistent with the government's claim, made repeatedly in connection with the February 12 hearing, that it was Mr. McCaughey who was jamming Officer Hodges into the doorway.  Surely if that was the case, Officer Hodges would have directed his screams at Mr. McCaughey *directly* and implored *him* to stop single-handedly pressing him against the door jamb. Instead, as aforesaid, he told WUSA9 that he was screaming to alert "them" to give him a way out.  This newly discovered interview with Officer Hodges not only significantly undermines the government's most serious claims against the defendant, but it really provides common-sense context and harmony to facts available to the Court today, that were not apparent on February 12, 2021.

For instance, knowing that Officer Hodges was not screaming out in pain makes sense, now, given the unlikelihood that Mr. McCaughey had the strength necessary to cause screech-inducing pain by merely pressing the flat face of a plastic defensive shield against the well armored officer.

And the fact that Hodges wasn't screaming in pain from an assault by Mr.

---

[1] In fact, Mr. McCaughey did not stop trying to signal Hodges' fellow officers of his need for assistance until finally another officer acknowledged him by nodding his head.

McCaughey is consistent with what appeared previously to be the incongruous actions of McCaughey in (a) imploring the crowd to relieve the pressure so that Hodges could free himself, (b) lowering for Hodges his own protective face shield, and (c) exhorting Hodges' colleagues to attend to him and render any necessary aid or comfort.

In view of these newly discovered revelations from the proverbial horse's mouth, the nature and circumstances of the alleged crime and the weight of the evidence in support of the government's claim that Mr. McCaughey was intentionally and forcibly assaulting Officer Hodges with a dangerous or deadly weapon, are significantly less in favor of detention than appeared to the Court on February 12, 2021.

### B. The Government Has Added A Similarly Situated Codefendant To The Defendant's Indictment And He Has Been Release Without Any Security.

Another piece of information not known to the defendant or the Court on February 12 is that, shortly thereafter, the government obtained a superseding indictment that now included a co-defendant, Tristan Stevens, who is charged with the same crimes as Mr. McCaughey, including the most serious offense of Assaulting an Officer with a Dangerous or Deadly Weapon. In fact, Stevens is charged with *more crimes* (13) than Mr. McCaughey (11). And like Mr. McCaughey, co-defendant Stevens has no prior criminal record, is an out of district resident – he lives in Florida – and, on information and belief, he likewise has no ties to the District of Columbia other than his decision to travel here on January 6, 2021 for the Capitol protest. Nonetheless, the Court not only did not order Mr. Stevens detained, *but it released him merely on his own recognizance.*[2]

---

[2] The defendant takes no issue with the decision to release Mr. Stevens on his own recognizance, as it is wholly consistent with the purposes of the Bail Reform Act. "Our system of criminal justice embraces a strong presumption against detention." U.S. v.

At least one district court has acknowledged the fundamental unfairness of detaining a codefendant when a similarly situated codefendant in the same indictment has been released. "[C]ognizant of the pretrial release of all other defendants indicted by the same Grand Jury for similar offenses, this Court's abhorrence of disparity of treatment within a judicial district led it to examine closely the justification for pretrial detention of defendant Cox." U.S. v. Cox, 635 F.Supp.3d 1047, 1049 (D. Kansas 1986).

In fact, this Court expressly considered and compared, during the February 12, 2021 hearing, the defendant's situation with other defendants in this investigation –*who are not even in this indictment* – in determining that he should be detained. "There's a number of defendants who are charged in this court, including some in front of me. He's the only one that I'm aware of charged in front of me who apparently acted in a violent manner and has been charged with acts of violence." *Transcript*, p. 27.

In light of this new information, such inequity and unequal treatment ought not stand and Mr. McCaughey should be released pending trial. Id.; *see also*, U.S. v. Boustani, 932 F.3d 79, 82 (2d Circuit 2019) (wherein the Court discussed the "fundamental principal of fairness" that similarly charged defendants ought to be treated similarly under the Bail Reform Act).[3]

---

Hassanshahi, 989 F.Supp.2d 110, 113 (Dist. D.C. 2013) (*citing*, U.S. v. Hanson, 613 F.Supp.2d 85, 87 (D.D.C.2009)). The problem here is that Mr. McCaughey, who is similarly situated – except for the actual and substantial bail package he has proposed and that his codefendant did not – should also be released pending trial.

[3] This Court ought to also consider, in terms of fundamental fairness, the fact that the government is now seeking to deem this indictment "complex" for purposes of the Speedy Trial Act, and has already begun to seek to delay the defendant's trial by filing a Motion to Continue (ECF #22). However, as set forth orally during the March 12, 2021 status conference and in his written Opposition papers (ECF #25), this presumed innocent defendant ought not be made to wait for his trial – in prison - because the government

### C. The Defendant's Mother And Grandmother Are Now Willing To Offer Their Respective Houses In CT To The Proposed Bail Package.

The defendant is also presenting new information in connection with his proposed bail package; to wit, that: (1) his mother, Ulrike Fein-McCaughey, has now agreed that the government can lien her longtime home in Ridgefield, Connecticut, in which she has approximately $140,000 in equity, and (2) his grandmother, Margaret Jay, is now willing to allow the government to lien her property in New Canaan, CT, which she owns free and clear of any encumbrances and which is worth at least a $725,000.[4]

The defendant previously presented an already unusually substantial bail package that included a government lien on his father's home in South Salem, NY with equity of an estimated $450,000. On top of that, the defendant's father had agreed to pledge a small property in Maine worth $150,000 and, if necessary, to post an additional $150,000 in cash, while his mother agreed to sign as an unsecured surety in the amount of $250,000. Should the Court now include a lien on the defendant's mother's newly available home and his grandmother's newly available property as a part of a package of condition of his release, Mr. McCaughey would have a significantly higher incentive to appear and court and to not commit any crime while awaiting trial, lest his three closest family members – *both* of his parents *and* his grandmother – lose their houses.

---

*chose* to hastily arrest him, rather than waiting to complete its investigation.

[4] Ms. Fein-McCaughey had heretofore only been willing to act as an unsecured surety, while Ms. Jay was not willing to contribute at all to the defendant's proposed bail package.

8

### D. This Court Mistakenly Applied The Rebuttable Presumption Standard.

Still another changed circumstance is that, upon review of the recently received transcript of the February 12 hearing, defense counsel discovered that the Court mistakenly applied a rebuttable presumption standard that doesn't apply in this case.

In its detention order of February 12, this Court stated: "I find that there is a rebuttable presumption that arises under 18 U.S.C. 3142(e)(2) for detention and because the Defendant is charged with a crime of violence under 18 U.S.C. 3142(f)(1)." *Transcript*, p. 24. However, an alleged crime of violence does not trigger such a presumption under 18 U.S.C. §3142(e)(2), which only applies to defendants with certain prior criminal convictions, or § 3142(e)(3), which applies to certain categories of crimes, none of which are alleged against this defendant.

"The default position of the law …is that a defendant should be released pending trial." U.S. v. Taylor, 289 F.Supp.3d 55, 62 (D.C. District 2018) (citing, U.S. v. Stone, 608 F.3d 939, 945 (6th Cir. 2010) "That default is modified, however, for certain particularly dangerous defendants." Id. In particular, the Bail Reform Act creates a rebuttable presumption "that no condition or combination of conditions will reasonably assure ... the safety of the community if ... there is probable cause to believe that the person committed" one of an enumerated list of crimes, including a crime carrying a maximum term of imprisonment of ten years or more under the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, or a violation of 18 U.S.C. 924(c)." Id.

Without a presumption in this case, the government cannot meet the applicable burdens of proof to warrant continued detention of Mr. McCaughey.

II. **The New Bail Package, In Light Of The Other Newly Discovered Information, Is More Than Enough To Secure The Safety Of The Community And Mr. McCaughey's Appearance In Court.**

  A. <u>The Government Hasn't Provided Even A Plausible Hypothetical Scenario Whereby Mr. McCaughey Would Be A Danger To The Community, Let Alone Provide Clear And Convincing Evidence Thereof.</u>

As set forth in the defendant's original Motion for Bond, there is every indication that, whatever the defendant may or may not have done on January 6, 2021, this is a one-time event. No evidence has been presented to show that Mr. McCaughey conspired with anyone, nor that he planned to get so close to, and involved with, the protest that he is now accused of various federal crimes.

Furthermore, the government has yet to even proffer, let alone prove by clear and convincing evidence, that there is some plausible future scenario where Mr. McCaughey will be a danger to the community at all. He has no criminal record, has led an exemplary life up until the events that led to this indictment, and there is virtually no chance that there will be any other upcoming 2020 election-related protests or rallies such as the once-in-a-generation event that occurred on January 6, 2021, which provided a unique confluence of circumstances that were indispensable in bringing Mr. McCaughey to his current lot.

The Court even recognized in its February 12 ruling that, but for the massive protest that day, Mr. McCaughey would not have engaged in the alleged illegal activity. "You probably would not have done any of this alone, but the Defendant willingly joined a mob that injured dozens of officers and permanently scared our country." (*Transcript*, p. 26).[5]

---

[5] The Court likewise noted that the history and character of the defendant militate against detention. "I disagree with the government about the Defendant's history and

Thus, the government cannot sustain its burden of proving, by clear and convincing evidence, that Mr. McCaughey will be a danger to the community should he be released on the stringent proposed conditions.

### B. The Government Likewise Can't Meet Its Burden To Show That It Is More Likely Than Not That Mr. McCaughey Is A Flight Risk.

The defendant is a lifelong resident of the United States with substantial ties to the State of Connecticut. The fact that he has little ties to the District of Columbia should be of little moment, as none of the hundreds of "Capitol defendants" have significant ties to the District of Columbia yet, on information and belief, the majority of them are currently *not detained*, including the co-defendant who resides all the way down in Pensacola, Florida.

In addition, and despite the Court's statements to the contrary on February 12, the defendant *is* employed – he works for his father's construction business. (See, defendant's *Motion for Bond, Exhibit B*, ECF #9).

Moreover, the defendant's two passports are in the possession of undersigned counsel and will be handed over to the government or the court upon request. "[W]here the defendant is a dual citizen and dual passport-holder, the D.C. Circuit has considered it relevant that his passports have been confiscated." U.S. v. Hassanshahi, 989 F.Supp.2d 110, 116 (2013) (citing, U.S. v. Nworko, 651 F.3d 108, 110, n. 2).

Notably, in Hassanshahi, the defendant was a born and bred Iranian national with extensive ties to Iran. Here, the defendant's dual citizenship with Germany is only by virtue of his being born in the United States to a German National mother, he has never

---

characteristics. I think that factor would favor release here. The Defendant has no criminal history. He has a good reputation in the community." Id.

11

lived in Germany – or anywhere else outside of the United States – and there is no evidence he has any family in Germany. Mr. McCaughey is a born and bred American young man who happens, by operation of law, to have dual citizenship.[6]

In short, the exuberant and naïve Mr. McCaughey certainly made a terrible decision in getting that close to the action that day but, especially in light of the new information presented herein, the government cannot meet its burdens of proof because he is neither a danger to the community going forward, nor is he in any way a flight risk.[7]

### III.   Supplemented Proposed Conditions of Release

The defendant submits the following supplemented proposed conditions of his release:

1. Ms. Ulrike Fein-McCaughey, the defendant's mother and the person with whom the defendant was residing at the time of his arrest, is prepared to act as Mr. McCaughey's 3rd Party Custodian and pledge as security her real property set forth below, which has equity of approximately $140,000.

---

[6] To alleviate any possible lingering concern that the defendant would try to flee to Germany despite the fact that his passports are confiscated and all of his ties are to this country, the defendant is prepared to "sign a waiver of any rights not to be extradited to the United States…" U.S. v. Karni, 129, 133 (D.C. District 2004) (ordering release of defendant with "no ties to the United States"). Further, the US and Germany have an extradition treaty dating back to 1978 and which specifically enumerates, as extraditable crimes, felony charges involving "civil disorder" and "unlawful obstruction of … government proceedings…," with which the defendant is so charged herein. (See, Treaty Appendix. Germany International Extradition Treaty with the United States.pdf (mcnabbassociates.com))

[7] Mr. McCaughey believes he has been grossly overcharged by the government and is very much looking forward to his "day in court."

**_Ulrike Fein-McCaughey_ (Mother) (Third Party Custodian & Real Property lienee / Surety)**



2. Mr. Patrick McCaughey, III, father of the Defendant, will pledge as security, at minimum, his real property known as 10 Hoyt Street, South Salem, NY, in which he has confirmed equity of approximately $450,000.00. If necessary, he is also prepared to post up to $150,000.00 in cash for bond, as well as accept a lien for his full equity stake, in favor of the government, on a property he owns free and clear, in Maine, worth approximately $150,000.00.

**_Patrick Edward McCaughey III_[8] (Father) (Real Estate lienee / Surety)**



---

[8] Due to an error when the defendant's mother registered the defendant with state authorities at birth, the defendant was given the same identical name as his father, instead of being properly named Patrick Edward McCaughey the IV.

3. Ms. Margaret Jay, the defendant's grandmother, will pledge as security her real property known as 52/54 Hillside Avenue, New Canaan, CT 06840, which she owns free of any mortgages or liens and which has an estimated value of $725,000.

***Margaret Coppinger Jay (Grandmother) (Real Estate lienee / Surety)***



4. The defendant will wear an electronic monitoring / gps device and be subject to curfew and/or home confinement if deemed necessary by the Court.

5. The defendant shall be required to maintain employment with his father's construction business.

6. The defendant's travels are to be limited to the District of Connecticut, the Southern District of New York, and to and from the within District for physical court appearances herein.

7. The defendant shall surrender – either to his attorney or the Clerk of Court – any passports in his name and possession.

8. The defendant agrees to such other terms and conditions as the Court deems appropriate for his release.

Dated: Stamford, CT
March 31, 2021

Respectfully Submitted,

By: _____
Lindy R. Urso (ct 20315)
Attorney at Law
810 Bedford Street, Suite 3
Stamford, CT 06901
Tel: 203-325-4487
Fax: 203-357-0608
lindy@lindyursolaw.com

## CERTIFICATION OF SERVICE

This certifies that a copy of the foregoing Motion was filed via ECF on this 31st day of March in the year of our Lord 2021.

_____
Lindy R. Urso