UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

------------------------------------- X
UNITED STATES OF AMERICA,      :   Criminal No. 21-cr-40 (TNM)
                               :
v.                             :
                               :
PATRICK MCCAUGHEY III,         :
                               :
           Defendant.          :   April 5, 2021
------------------------------------- X

### OPPOSITION TO MOTION FOR PROTECTIVE ORDER

The Defendant Patrick McCaughey III respectfully opposes the government's Motion for Protective Order, for the reasons that follow.

#### A. Defendant Doesn't Object To Specific Partial Protective Order.

At the outset, the defendant has no objection to a Protective Order issuing for the items set forth in ¶¶1a, b, c, d, e, and j of the government's Motion, the objects of which are specific and clear for the parties and the Court to ascertain. However, the defendant believes the government hasn't shown "good cause" with respect to the items in ¶1f, g, h, and i.

#### B. The Government Doesn't Meet Its Burden Of Proof With Respect To The Remaining Non-Specific Blanket Request.

By these broad and non-specific protective order requests, the government is seeking to sidestep the plain language and purpose of Rule 16(d) of the Federal Rules of Criminal Procedure. Rather than put the onus on the defendant to have to complain to the Court each time it contests the government's one-sided designations, as the government is proposing, the language and spirit of

1

Fed.R.Crim.P. 16(d) are clear that the party seeking the order must first show "good cause" why a particular protective order should issue.

"The burden of showing 'good cause' is on the party seeking the order, and 'among the considerations to be taken into account by the court will be the safety of witnesses and others, a particular danger of perjury or witness intimidation, [and] the protection of information vital to national security.'" U.S. v. Cordova, 806 F.3d 1085, 1090 (DC Cir. 2015) (citations omitted). "'Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing.'" U.S. v. Johnson, 314 F.Supp.3d 248, 251 (D.C. District 2018) (citing U.S. v. Wecht, 484 F.3d 194, 211 (3rd Cir. 2007). Here, the government ought not be able to ask for the blanket, nonspecific protective order it seeks, effectively passing its burden of proof onto defendant, so that he has to come to the Court to try to "unprotect" something that may well not ought to have been protected in the first instance.[1]

For instance, with respect to ¶1f, the government seeks a Protective Order for "Sources and methods law-enforcement officials have used, and will continue to use, to investigate other criminal conduct related to the publicly filed charges." However, the blanket statement preceding, that the government may designate material as "sensitive" or "highly sensitive," without any specificity, is not enough to

---

[1] The government's broad, blanket protective order request is, frankly, offensive, as it had no problem going full bore in publicly besmirching the defendant in a press release upon his arrest; now, after having so tarred Mr. McCaughey, it wants to shield from public viewing what evidence it claims it has to support those outrageous comments.
https://www.justice.gov/usao-dc/pr/connecticut-man-charged-assaulting-officer-during-us-capitol-breach

2

allow this Court to render an informed decision about whether a protective order should issue in this regard. For all the Court knows, the government could claim that FBI 302 reports could reveal the interview techniques of FBI agents and, therefore, are "highly sensitive." In each such instance, the burden and onus under our rules is such that the government ought to seek specific protection for any class of items; not a blanket order for anything that the government, in its own discretion, deems "sensitive."

The government further seeks, in ¶1g, a protective order for Capitol surveillance camera footage, relying heavily on the Declaration of the General Counsel for the U.S. Capitol Police, Thomas A. DiBiase. However, Mr. DiBiase's own Declaration reveals that, per policy, it has already released said footage to, inter alia, the United States Attorney's Office for purposes of this and other criminal investigations.

In ¶4 of the Declaration, DiBiase reveals that, "[p]er Department Directive 1000.002 … cameras would only be used for matters related to national security and legitimate law enforcement purposes (e.g., serious crimes)." DiBiase goes on to reference areas that fall outside of that Directive, like FOI requests; however, that commentary essentially amounts to "white noise" distracting from the issue at hand. In this case, per the Directive, the USCP did turn the materials over to the government for purposes of this prosecution and, as such, it is no longer subject to any USCP policies and procedures but, rather, its usage is now controlled by the various laws and rules of disclosure governing criminal matters. This conclusion is confirmed by the pertinent Information Sharing Agreement between the USCP and the FBI as pertains to the events of January 6, 2021.

Critically, the relevant "Information Sharing Agreement" appended to DiBiase's Declaration specifically states that "[t]his restriction does not apply to any video, audio, photographic or documentary evidence that is used as evidence or discovery as part of any prosecution of any criminal offense." Thus, by the government's own submission, it is clear that the USCP expressly understood when it turned over videos, pictures, etc. to the FBI for this investigation, that further disclosure of those materials pursuant to the criminal discovery process was outside of its control.[2]

Similarly, the government's reliance on "security information" as defined in 2 U.S.C. §1979 in ¶1i of the proposed protective order, is of no moment. Paragraph (b) thereof provides that "[n]otwithstanding any other provision of law, any security information in the possession of the Capitol Police may be released by the Capitol Police to another entity, including an individual, only if the Capitol Police Board determines in consultation with other appropriate law enforcement officials, experts in security preparedness, and appropriate committees of Congress, that the release of the security information will not compromise the security and safety of the Capitol buildings and grounds or any individual whose protection and safety is under the jurisdiction of the Capitol Police."

Here, the USCP already made that determination both when it issued Directive 1000.002 and when it entered into the aforementioned "Information Sharing Agreement" with the FBI. Surely if the USCP had lingering, legally enforceable concerns about the release of such footage to the FBI, it would not

---

[2] The defendant sees no reason why the "repair estimates" referenced in ¶1h of the proposed order should be protected, let alone the required "good cause."

have included that very last sentence, referenced above, that expressly excludes information that it provides to the FBI for this and other January 6, 2021 investigation, from its enumerated protections. Therefore, USCP materials in the government's possession should be disclosed according to the normal rules of discovery.

To the extent that the USCP's designation of the subject materials as "security information" under 2 U.S.C. ¶1979 is pertinent in any event, Mr. DiBiase has acknowledged that only a tiny fraction of such materials has been so designated. "At this juncture, the Department in consultation with the Capitol Police Board, has designated only a small subset, consisting of less than 17 hours of footage, as 'security information, as that footage relates to evacuation of Members from their respective chambers on January 6." (Decl. ¶16).[3]

Mr. DiBiase also notes a lingering "concern" by the USCP that defendants who are provided with too much footage could be a national security risk because, whomever possessed the array of footage would have a "clear picture of the interior of the Capitol, including entry and exit points, office locations, and the relation of the crucial chambers and offices (such as the Speaker's Office or Majority Leader's Office) to other areas of the Capitol." (Id). This concern is echoed in ¶14 of his Declaration, albeit more vaguely. Most critically, though, the information that Mr. DiBiase is apparently worried about becoming public, is already publicly available.

A quick Google search reveals that, at the following government website -

---

[3] In the event the government were specifically seeking a Protective Order for such footage, explaining, for instance, that it would reveal specific evacuation safety protocols, the defendant would have no objection to such a request.

https://www.govinfo.gov/content/pkg/CDIR-2000-10-01/pdf/CDIR-2000-10-01-CAPITOL.pdf – there is a complete blueprint-style layout of the Capitol Building, including directories showing the precise locations of the offices of the Speaker of the House, the Majority Leader, and every other important location within the building.  (Exhibit A).[4]

### C. The Defendant Objects To The Limiting Definition Of Legal Defense Team.

The Government proposes that any protected information only be viewed by "defense counsel and any attorneys, investigators, paralegals, support staff, and expert witnesses who are advising or assisting defense counsel in connection with this case."  Proposed Order, ¶3.  It is the longstanding practice of undersigned counsel, however, to run various pieces of evidence and other aspects of any particular case by non-lawyer friends in order to obtain perspectives akin to the potential jury.  Over the years, counsel has found it indispensable to his successful representation of clients, in gauging the relative importance and potential impact any particular item may have in the event the matter was to proceed to trial.

In addition, there are members of the defendant's family who are actively assisting undersigned counsel with the defense, though they would fall outside the limited definition of "defense team" as proposed by the government.  Accordingly, in the even the Court were to grant any or all of the government's Motion, the defendant requests that "laypeople assisting in the defense" be included within the scope of permitted viewers.

---

[4] Entry / exit points can also be gleaned from a single pedestrian loop around the Capitol building.

### D. This Proposed Order Would Hamper The Defendant's Ability To Meaningfully Assist In His Defense.

Paragraph 6a of the proposed order essentially forbids undersigned counsel from providing copies for this *incarcerated* defendant to view; hence, the only way that the defendant may view such materials is in the presence of undersigned counsel or his agent(s). This restriction would be an unreasonable limitation on the ability of the defendant to aid in his own defense in light of his continued incarceration – especially in light of limitations on visits presented by the pandemic.

For those reasons, the defendant avers that the government has not met its burden to be specific in its requests and to otherwise show "good cause" for the extremely broad requested protective order.

Dated:  Stamford, CT
April 5, 2021

Respectfully Submitted,

By: _____
Lindy R. Urso (ct 20315)
Attorney at Law
810 Bedford Street, Suite 3
Stamford, CT 06901
Tel: 203-325-4487
Fax: 203-357-0608
lindy@lindyursolaw.com

CERTIFICATION OF SERVICE

This certifies that a copy of the foregoing Motion was filed via ECF on this 5th day of April in the year of our Lord 2021.

Lindy R. Urso