UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-cr-40-TNM |
| | : | |
| PATRICK E. McCAUGHEY III and | : | |
| TRISTAN STEVANS, | : | |
| Defendants. | : | |

**UNITED STATES' REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

The United States of America hereby respectfully submits its reply in support of its motion for the entry of a protective order governing the production of discovery by the parties in the above-captioned case.

1. Defendant McCaughey (hereinafter Defendant) is charged via indictment with offenses related to crimes that occurred at the United States Capitol on January 6, 2021. In brief, on that date, as a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election, members of a large crowd that had gathered outside forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. Scores of individuals entered the U.S. Capitol without authority to be there. As a result, the Joint Session and the entire official proceeding of the Congress was halted until the Capitol Police, the Metropolitan Police Department, and other law enforcement agencies from the city and surrounding region were able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials. This event in its entirety is hereinafter referred to as the "Capitol Attack."

2.      Because such a large number of people, including the Defendant, joined the mob involved in the Capitol Attack, the resulting criminal investigation (and related discovery) is simply huge.  Hundreds of individuals have been charged.  Hundreds more are being investigated.  The investigation already involves thousands of hours of video, over a thousand electronic devices, thousands of reports, and the numbers just continue to grow as more suspects are identified and arrested.  Moreover, there are specific and prominent security concerns at issue as well – namely ensuring the continued safety of those working in the Capitol while simultaneously prosecuting those who attacked them.  Given this larger context and the need to provide discovery effectively and efficiently to the Defendant, his co-defendant, and additional co-defendants likely to be added to the case, the government has sought the proposed protective order.

3.      Ultimately, in order to comply with its discovery and disclosure obligations, the Government intends to make voluminous materials available in all pending cases arising out of the events of January 6, 2021, including this one.  These materials will include information such as tips, witness statements, and the results of searches performed upon other individuals' devices and accounts.  Given the volume of material that is likely to be made accessible to the Defendant here, the proposed order ensures that this information, where appropriate, will be adequately protected.

4.      The Defendant blithely ignores this larger context and contends that the government has failed to show good cause for issuing the proposed protective order.  Specifically, the Defendant opposes some of the illustrative examples cited in the protective order as the types of items that would be marked as either "Sensitive" or "Highly Sensitive," including:  (f.) Sources and methods law-enforcement officials have used, and will continue to use, to investigate other criminal conduct related to the publicly filed charges; (g.) Surveillance camera footage from the

2

U.S. Capitol Police's extensive system of cameras on U.S. Capitol grounds; (h.) Repair estimates from the Architect of the Capitol; and (i.) Materials designated as "security information" pursuant 2 U.S.C. § 1979.

5.  First, as it relates to subcategory f, the Defendant's concerns about the protective order being used to somehow over-protect common documents like an interview summary are overblown and ignore the terms of the order designed to ensure its reasonable application. As stated in Paragraph 1 of the proposed order, the "government agrees to make every effort to provide discovery in a manner that will allow for most discovery to be produced without such designations." To that end, in reviewing and producing the first major round of discovery in this case, which has involved nearly 300 files from the McCaughey case file already, the government only identified a handful of documents that should be labeled as "Sensitive" and covered by the protective order. These few documents were labeled as "Sensitive" solely because they included personal identity information of the Defendant, and as such are not being provided to his co-defendant until the protective order is in place. (The only other items thus far identified as being covered by the proposed protective order consists of Capitol surveillance camera footage, which is addressed below.)

6.  Further, should the government somehow over-reach, the proposed protective order sets forth a way to address any missteps. Pursuant to Paragraph 8 of the proposed order which requires the parties to make a good faith effort to resolve any dispute about a sensitivity designation before requesting the Court's intervention, the defense could simply reach out to the government to ask that the sensitivity designation be reduced or removed. The beauty of having this protective order in place from the beginning is that instead of delaying production of evidence until after the issue is litigated document by document, it allows the government to get the relevant evidence to

3

the defense as quickly as possible and thereby allows the defense to use that evidence for its primary purpose -- to prepare for the case. At the same time, the protective order sets up a procedure on the backend to deal with disagreements about particular items in a reasonable and informed manner. This is critical in such a large and complex case such as this one, with such a voluminous amount of evidence.

7. Second, as it relates to category g (Capitol surveillance footage) and category i (Materials designated as "security information" pursuant 2 U.S.C. § 1979), the Defendant essentially claims both that there is no valid security concern and that any right the U.S. Capitol Police ("USCP") had to protect that data went out the window the second it was provided to law enforcement investigating the Capitol Attack cases. Both arguments are unfounded. As explained more thoroughly in the affidavit by the General Counsel for the USCP, the USCP surveillance footage is central to protecting the Capitol. It is a complicated network of cameras, whose locations are not publicly known. Those in-color, high definition cameras provide an in-depth view of the interior and entrances of the Capitol that is a far cry from the blurry two-dimensional blueprint appended to Defendant's motion or what one could learn by taking a legitimate and legal tour of the building. The USCP has a serious concern that if the footage were released without a protective order, the public at large (and the defendants, suspects, and yet to be identified individuals who are already implicated in attacking the Capitol in the first place) would be able to glean important security information, such as the location of the various cameras and the exact layout of the building. To protect that interest and ensure the security of the video system that is the center of its security system, the USCP only released the footage to law enforcement investigating the Capitol Attack with an understanding that a protective order would be in place to govern its dissemination and use. Similarly, 2 U.S.C. § 1979 protects

security information, which such footage clearly is, but the Board released it from those strictures *if* there was a protective order in place.[1]

8. Third, in a footnote, the Defendant summarily claims that there is no reason that Repair estimates from the Architect of the Capitol should be protected. As an initial matter, the government does not yet even know if there will be any repair estimates that will be relevant to this particular case. Nevertheless, at the request of the Architect of the Capitol, who has indicated that the estimates contain sensitive procurement information restricted from public dissemination by law, the government is requesting that the materials be included as potential material to be covered by the protective order for many of the same reasons described above. Including the material as potential items to be covered by the protective order avoids lengthy litigation over future documents that might be grouped in with larger discovery made available to the Defendant from related cases.

9. Fourth, the Defendant argues that counsel needs to be able to run evidence by friends and family members and as such the definition of the "legal defense team" should be expanded to include "laypeople assisting the defense." Such an expansion of the definition of

---

[1] For the reasons described above and in Attachment A, the Declaration of Thomas A. DiBiase, General Counsel to the United States Capitol Police the Government does intend to mark all surveillance video footage from the USCP surveillance cameras as Highly Sensitive. If such footage is produced to the Defense, and the Defense believes that a Highly Sensitive designation is inappropriate, the Defense will have the opportunity to contest that designation, as described above. At that time, the Defense will have the opportunity to explain to this Court how limiting the disclosure of such materials to the Defendant, his defense counsel, as well as any attorneys, investigators, paralegals, support staff, and expert witnesses on his defense team is hampering his ability to defend the case or why public disclosure is essential to Mr. McCaughey's defense to the charges. Similarly, if the Defense wishes to use such footage at a hearing in Court, it will be permitted to do so under the proposed order. The order simply requires the Defense to seek the Government's agreement or to give the Government an opportunity to propose conditions before the footage is disclosed in open court – a decision that ultimately rests with the Court.

the legal defense team would eviscerate the protection provided by the protective order. It would mean for instance that a document containing a witness's social security number or the name of a witness with security concerns could be shared with anybody and everybody, as long as it was done in communication with the defense. That makes no sense. To be successful, a protective order must actually protect the information at issue. If it can be shared with almost anyone, no such protection exists.

10. Fifth, the Defendant claims that the proposed protective order would hamper the Defendant's ability to participate in his own defense because he is incarcerated. Contrary to the Defendant's assertions, the protective order allows counsel to provide copies of protected materials to the appropriate contact at the Department of Corrections to enable viewing by the Defendant, as described in Paragraph 7 of the proposed order. The jail has specific procedures in place to allow for viewing of protected evidence by inmates, which allow for example material to be loaded onto a laptop and provided for the Defendant to view the material in his cell. (The government's understanding is that these procedures were previously shared with the court. In addition, after receiving the Defendant's opposition, the undersigned forwarded a copy of the relevant procedures to defense counsel.)

11. For these reasons and those stated in our motion, the Government has demonstrated the "good cause" required for the Court to issue a protective order governing the production of discovery in this matter. *See United States v. O'Keefe*, No. 06-CR-0249, 2007 WL 1239204, at *2 (D.D.C. Apr. 27, 2007) (describing the court's discretion as "vast"); *Cordova*, 806 F.3d at 1090 ("[A] 'trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect.'" (quoting *Alderman v. United States*, 394 U.S. 165, 185 (1969)).

12.     For all of the foregoing reasons, the Government has demonstrated good cause for the Court to issue a protective order governing the production of discovery in this matter.

        Respectfully submitted,

        CHANNING D. PHILLIPS
        Acting United States Attorney
        DC Bar No. 415793

By: /s/
        MELISSA JACKSON
        Assistant United States Attorney
        D.C Bar Number 996787
        United States Attorney's Office
        555 Fourth Street, N.W.
        Washington, D.C. 20530
        Telephone: (202) 815-8585
        Email: Melissa.Jackson@USDOJ.GOV