UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Criminal No.  1:21-CR-40 (TNM) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| PATRICK MCCAUGHEY III, | : | |
| | : | |
| Defendant. | : | |
| | : | April 15, 2022 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## MOTION TO DISMISS COUNT THIRTY-FOUR

The defendant Patrick McCaughey III, through counsel, respectfully moves pursuant to Fed.R.Crim.Proc. Rule 12(b)(3)(B)(v) that this Court dismiss Count 34 of the 5th Superseding Indictment, charging him with Obstruction of an Official Proceeding, in violation of 18 U.S.C. §1512(c)(2).

### I.     INTRODUCTION

Count Thirty-Four of the 5th Superseding Indictment charges Mr. Mccaughey as follows:

> On or about January 6, 2021, within the District of Columbia and elsewhere, Patrick E. McCaughey III… attempted to, and did, corruptly obstruct, influence, and impede and official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18.

> The subject statute, 18 U.S.C. §1512(c)(2), is contained within Chapter 73 of

Title 18, which is entitled "Obstruction of Justice."  Section 1512 is entitled "Tampering

1

with a witness, victim, or an informant."  A review of Chapter 73 generally, and §1512 in particular, reveals a clear and singular concern of Congress, namely, to punish those who undertake malicious efforts to adversely affect the administration of justice.  See, 18 U.S.C. §§1501 ("Assault on process server"); 1502 ("Resistance to extradition agent"); 1503 ("Influencing or injuring officer or juror generally"); 1504 ("Influencing juror by writing"); 1505 ("Obstruction of proceedings before departments, agencies and committees"); 1506 ("heft or alteration of record or process; false bail"); 1507 ("Picketing or parading"); 1508 ("Recording, listening to, or observing proceedings of grand or petit jurors while deliberating or voting"); 1509 ("Obstruction of court orders"); 1510 ("Obstruction of criminal investigations"); 1511 (Obstruction of State or local law enforcement"); 1513 ("Retaliating against a witness, victim, or an informant"); 1514 ("Civil action to restrain harassment of a victim or witness"); 1514A ("Civil  action to protect against retaliation in fraud cases"); 1515 (Definitions…); 1516 ("Obstruction of Federal audit"); 1517 ("Obstructing examination of financial institution"); 1518 ("Obstruction of criminal investigations of health care offenses"); 1519 ("Destruction, alteration, or falsification of records in Federal investigations and bankruptcy"); and 1520 ("Destruction of corporate audit records").

It is clear that the allegations in Count Thirty-Four of the Indictment do not allege a legally cognizable crime, both because (a) the events at the Capitol on January 6, 2000, as alleged, do not fall within the applicable definition of "official proceeding" as set forth in 18 U.S.C. §1515(a)(1), and (b) the defendant's conduct as alleged therein does not fall within the ambit of the charged statute generally.

II.   **DISCUSSION**

A. *Standard Of Review*

A defendant may move to dismiss an indictment on the grounds that it fails to state an offense.  Fed. R. Crim. P. 12(b)(3)(B).  In considering a Rule 12 motion to dismiss, "the Court is bound to accept the facts stated in the indictment as true." *United States v. Syring*, 522 F. Supp. 2d 125, 128 (D.D.C. 2007); *United States v. Sampson*, 371 U.S. 75, 78 (1962).  Accordingly, "the Court cannot consider facts beyond the four corners of the indictment."  *United States v. Ring*, 628 F. Supp. 2d 195, 204 (D.D.C. 2009) (internal quotations omitted).

B. *The Electoral College Certification Was Not An "Official Proceeding."*

Count Thirty-Four of the 5th Superseding Indictment charges that  Mr. McCaughey obstructed an "official proceeding," in violation of 18 U.S.C. § 1512(c)(2) and it identifies that "proceeding" as "Congress's certification of the Electoral College vote." Nevertheless, as set forth below, the Electoral College certification before Congress does not constitute an "official proceeding" under 18 U.S.C. §§ 1512(c)(2) and 1515(a)(1).

1.   As with All Penal Statutes, § 1512 Must Be Strictly Construed.

To determine legislative intent, courts "always begin with the text of the statute." *Am. Fed'n of Gov't Emps., AFL–CIO, Local 3669 v. Shinseki*, 709 F.3d 29, 33 (D.C.Cir. 2013). "It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain...the sole function of the

courts is to enforce it according to its terms." *United States v. Hite*, 769 F.3d 1154, 1160 (D.C. Cir. 2014) (*quoting Caminetti v. United States*, 242 U.S. 470, 485 (1917) (internal quotes omitted)). "The search for the meaning of the statute must also include an examination of the statute's context and history." *Hite*, 769 F.3d at 1160.

"[D]ue process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Lanier*, 520 U.S. 259, 268 (1997).   Specifically in relation to § 1512, the Supreme Court has instructed lower courts to "exercise restraint in assessing the reach of [the]...statute both out of deference to ...Congress...and out of concern that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed[.]" *United States v. Arthur Andersen*, LLP, 544 U.S. 696, 703 (2005) (internal citations omitted). Any "ambiguity" as to the meaning of terms in a statute must be construed against the Government and in favor of a defendant under the rule of lenity. *See, e.g., United States v. Cook*, 594 F.3d 883, 890 (D.C. Cir.), *cert. denied*, 560 U.S. 947 (2010

2. <u>The meaning of the term "official proceeding" is not clear from a reading of the statute.</u>[1]

There is nothing clear about the definition of "official proceeding" in 18 U.S.C. §1515(a)(1).  Like the balance of the whole of Chapter 73 of Title 18, the three out of for subsections of §1515(a)(1) that are not applicable herein each refer to some sort of a

---

[1] Presumably the government is taking the position that the electoral college certification process comprises "a proceeding before Congress" as set forth by 18 U.S.C. §1515(a)(1)(B).

hearing or adversarial process.  Subsection (1)(B), however, merely indicates that it is "a proceeding before Congress."   Congress has many roles: it is responsible for certifying the presidential electoral vote every 4 years, it debates and votes on bills, it conducts oversight hearings regarding various agencies, and its various committees have broad investigatory powers, which often involve adversarial proceedings with witnesses testifying under oath.   As much as the latter of the aforementioned Congressional functions fits nicely within the overarching "obstruction of justice" theme of Chapter 73 of Title 18, the first two – certifying the electoral college vote and debating and voting on bills – simply do not fit in any way shape or form; other than the fact that those actions are "official."   Courts that have encountered §1512(c)(2) have, rightly, focused more on the meaning of the word "proceeding."

3. <u>The plain meaning of "proceeding" envisions some sort of adversarial hearing; not a mere Congressional vote</u>.

"Proceeding" is "a term defined in legal dictionaries as '[a]n act or step that is part of a larger action" and "the steps taken or measures adopted in the prosecution or defense of an action,' (quoting Black's Law Dictionary 1324 (9th ed. 2009)), or as 'a particular step or series of steps in the enforcement, adjudication, or administration of rights, remedies, laws, or regulations' (quoting Merriam-Webster's Dictionary of Law 387 (1996)).  <u>Altman Contractors, Inc. v. Forster Specialty Ins. Co</u>., 832 F.3d 1318, 1323 (11th Cir. 2016) (citation omitted).   A district court which had the opportunity to examine this same definitional statute years before the events of January 6, 2020, found that Congress intended "proceeding" to mean some sort of a hearing.

In *U.S. v. Dunn*, 434 F.Supp.2d 1203, (M.D. AL 2006), the government tried to convince the court that an FBI investigation was an "official proceeding" under 18 U.S.C. §§ 1512(c)(2) and 1515(a)(1)(C).   The Court, after analyzing the meaning of the word "proceeding," found that "[n]ot only does the common and ordinary understanding of "proceeding" connote a hearing, see Black's Law Dictionary 1221 (7th Ed.1999) (defining "proceeding" as a hearing or any procedural means for seeking redress from a tribunal or agency), but the term "proceeding" is also used throughout § 1515(a)(1) to describe events that are best thought of as hearings (or something akin to hearings): for example, federal court cases, grand jury testimony, Congressional testimony, and insurance regulatory hearings, 18 U.S.C. § 1515(a)(1)(A), (B), & (D).   *Id., at 1207.*   The Court expressly understood §1515(a)(1)(B) to be akin to a hearing before Congress ("Congressional testimony") and not merely anything that occurs officially in the U.S. Capitol.  *Id.*  This conclusion is further bolstered by the government itself.

4. <u>The government's police force tacitly acknowledges that the subject allegations do not fit within the ambit of 18 U.S.C. §1512.</u>

In terms of the Department of Justice's handling of obstruction of justice matters, its Criminal Justice Manual provides that "…obstruction of a public corruption investigation or a congressional proceeding would fall under the supervision of the Public Integrity Section of the Criminal Division."   https://www.justice.gov/jm/jm-9-69000-protection-government-processes#9-69.100  (Exhibit D) The manual provisions regarding the Public Integrity Section then provide that:

> "[t]he Public Integrity Section (PIN) oversees the investigation and prosecution of all federal crimes affecting government integrity, including bribery of public officials, election crimes, and other related offenses.  PIN investigates and prosecutes some of the most sensitive, complex, and contentious public corruption cases handled

by the Department, including cases involving elected and appointed officials at all
levels of government.  PIN also serves as a source of advice and expertise for
federal prosecutors and agents regarding the handling of public corruption cases
nationwide, and plays a key role in developing Department policy concerning
public corruption and election crime investigations and prosecutions."
https://www.justice.gov/criminal-pin  (Id)

It is clear that allegations such as the ones in Count Thirty-Four of the Indictment
do not fall within the ambit of the DOJ's "obstruction of justice" policies.  This case does
not involve allegations of public corruption or election fraud.  It is a case of a mob of
unconnected individuals who allegedly took their protest too far and disrupted the orderly
conduct of a quadrennial ceremony.  Even the enforcement arm of the government
seemingly acknowledges that Congress did not consider "protests gone bad" as
"obstruction of *justice*."

This conclusion – that Congress did not intend for the pertinent allegations fall
within its "Obstruction of Justice" chapter – is further bolstered by the way the government
has charged other similarly situated individuals in the recent past.

5. <u>Past government conduct provides further implicit acknowledgement that
these allegations do not constitute the crime charged</u>.

In October 2018, during the confirmation hearings of Supreme Court Justice
Kavanaugh, a couple of hundred protestors were arrested, inside of the Capitol building,
because they obstructed, impeded and attempted to influence the outcome of the said
confirmation process.

"Throughout the proceedings, protesters also called on senators to "be a hero" and
demand that they say "no" to Kavanaugh.  As they demonstrated, they were led
out one by one as proceedings were repeatedly brought to a halt.  Capitol Police
told Newsweek that 37 people had been removed from the committee room in the
Hart Senate Office Building on Thursday, many charged with disorderly conduct
on Thursday.  Another 12 were reportedly removed from the area outside the
hearing room and charged with "crowding, obstructing or incommoding."  One man

was arrested in the judiciary Committee room and was charged with disorderly conduct, resisting arrest, simple assault and disruption of Congress.   On Wednesday, police made the decision to temporarily close the hearing to additional spectators, leaving seats empty, according to USA Today." https://www.newsweek.com/hundreds-people-have-been-arrested-over-kavanaughs-confirmation-hearing-1110549

Not a single such protestor was charged under 18 U.S.C. §1512; which makes sense, as the facts simply don't fit that crime.

In February 2018, almost a dozen people obstructed, interfered with, and attempted to influence a Congressional Rules Committee Hearing.

"Disability rights advocates were arrested on Tuesday for disrupting a House Rules Committee hearing to prepare legislation that would create additional requirements for filing lawsuits under the Americans with Disabilities Act (ADA).  Capitol Police spokeswoman Eva Malecki confirmed that 10 individuals were arrested for "unlawfully demonstrating" in the Capitol and charged with crowding, obstructing or incommoding as outlined by the D.C. code. https://thehill.com/homenews/house/373721-capitol-police-arrest-disability-rights-protesters-for-disrupting-hearing/

Not a single protestor was charged under 18 U.S.C. §1512 even though they blatantly interfered with and obstructed an official Congressional hearing.   But again, that makes sense, as this is not the sort of conduct contemplated by Congress via § 1512 or Chapter 73 in its entirety.  A look at other provision of §1512 provide further support for the idea that Congress did not intend that any official Congressional action constituted an "official proceeding."

Likewise in January and February 2017, Capitol Police arrested over 100 individual protesters for disrupting active Congressional hearings.   But they were charged with Misdemeanor offenses for disrupting Congress; not the 20-year felony that Mr. McCaughey faces – and he never even got close to the Certification, or anywhere inside of the actual Capitol for that matter.

"The criminal charge disruption of Congress is used against people suspected of protesting inside a meeting, session or gathering of Congress. The 55 arrests for disruption in January, though a marked increase from 2016, do not include arrests for other unlawful activities on U.S. Capitol grounds where members of Congress were not present. In 2016, police arrested nine people for disruption of congressional proceedings. In spring 2016, the agency arrested hundreds of people for unlawful protests outside the U.S. Capitol Building and out of range of members of Congress and formal proceedings." https://www.nbcwashington.com/news/local/55-arrests-for-disrupting-congress-in-january/29989/

And in September of 2017, another large group of disruptive protesters who were obstructing, interfering with, and attempting to influence Congress were arrested but not charged as this defendant has been.

"Protesters in wheelchairs were removed from a hearing on the Republican health care bill Monday afternoon after disrupting the session with chants of "No cuts to Medicaid! Save our liberty!"  The disruption prompted Senate Finance Committee Chairman Orrin Hatch, R-Utah, to adjourn the session until the protesters could be cleared out....Fifteen demonstrators were arrested and charged with disruption of Congress," Malecki said, adding, "143 individuals were arrested after refusing to cease and desist with their unlawful demonstration activities in the hallway. Twenty-three individuals were charged with crowding, obstructing, or incommoding and resisting arrest." https://abcnews.go.com/Politics/protesters-wheelchairs-removed-police-disrupting-graham-cassidy-bill/story?id=50081992

To be sure, the defendant believes his is a case of selective prosecution; however, the import of the above-cited disparities is important in that it arises almost analogously to a "consciousness of guilt."  Defendant is fairly certain that the government couldn't point to a single obstructive Congressional protester or interloper who, prior to January 6, 2000, has been charged under 18 U.S.C. §1512(c)(2) [2]

---

[2] The fact that this investigation is the most politically charged in DOJ history, as reflected by (a) the continual arrests of relatively minor protestors, (b) the government's pattern of not allowing line prosecutors to plea bargain the cases they are handling, etc., certainly explains why the government has pushed the envelope too far in trying to fit round allegations into a square statutory scheme.

6. <u>An analysis of §1512(c)(2) in the context of the rest of §1512 and of the whole of Chapter 73 of Title 18, provides still further indicia that Congress did not intend for the present allegations as "obstruction of justice."</u>

In 18 U.S.C. §1512(f)(1), for instance, Congress provided that "an official proceeding need not be pending or about to be instituted at the time of the offense…" Under no common-sense analysis can the Electoral Certification of January 6 fit within the rubric of subsection (f)(1); at no time is this official Congressional certification "about to be instituted" – or "instituted" at all.  It takes place every 4 years at 1:00 pm on January 6.  The language of §1512(f)(1) clearly contemplates an adversarial hearing of some sort; some kind of process where justice is supposed to be administered.

Moreover, and as set forth in the Introduction above, the entirety of Chapter 73 – and every single statutory subsection therein – surrounds the concept of obstruction of *justice*.    It defies logic, however, to believe that Congress, while addressing a spate of corporate fraud nationwide in the seminal 2002 Sarbanes-Oxley Act, decided to massively expand the scope of Chapter 73 by applying its obstruction prohibitions to any and all matters that occur in the Congress, smack in the middle of both §§1512/1515 and the whole chapter.  Even within the definitional statute, §1515(a)(1), the three (3) other definitions of "official proceeding" each surround the administration of justice in one forum or another.  18 U.S.C. §§1515(a)(1)(A), (C) and (D).  The defendant's interpretation is still further bolstered by the legislative history.

7. <u>The legislature explained in clear terms that the reason they added subsection (c) to 18 U.S.C. 1512 was to close an existing loophole; not to greatly expand the scope of its "obstruction of justice" statutory scheme</u>.

The legislation that initially created 18 U.S.C. §1512, PL 97-291, was entitled the "Victim and Witness Protection Act of 1982," and Congress' statement of "findings and purposes" is replete with references to victims and informants in the criminal justice system. (Exhibit A) And when subsection (c)(2) was added to 18 U.S.C. §1512 via the historic "Sarbanes-Oxley" corporate accountability act in 2002, the U.S. Senate, through Senator Orrin Hatch, was clear during floor debate that the sole reason for the addition of subsection (c) to §1512 was to close a "loophole" that previously existed in the overall statutory scheme, whereby it was a federal offense to persuade someone else to obstruct justice – but it was lawful to obstruct on one's own.  *Arnold & Porter Legislative History*: P.L. 107-204, Westlaw: SAROX-LH 41-D, at p. 72 (2002) (pertinent excerpt attached as Exhibit B)

C. *18 U.S.C. §1512(c)(2) Is Limited By Subsection (c)(1) And Doesn't Apply To The Facts As Alleged."*

In the interest of brevity and judicial economy, the defendant expressly adopts and incorporates herein the analysis and reasoning of Judge Nichols in his Memorandum Opinion of March 7, 2022 in <u>U.S. v. Garrett Miller</u>, 1:21-cr-119 (CJN), 2022 WL 823070 (D.C. District March 7, 2022) (A copy of that Opinion is attached hereto as Exhibit C), as it applies squarely, and equally, to Mr. McCaughey.

### III.    __CONCLUSION__

For the foregoing reasons, and because of long-standing precedent which provides that criminal statutes, such as the one that the government is stretching to use herein be strictly construed, Mr. McCaughey respectfully requests that the Court dismiss Count Thirty-Four of the 5th Superseding Indictment for failure to state a claim.

Respectfully submitted,


By:    _____/s/_____
       Lindy R. Urso
       Attorney at Law
       Bar No.: ct 20315
       810 Bedford Street, Suite 3
       Stamford, CT 06901
       Tel: (203) 325-4487
       Fax:   (203) 357-0608
       Email: lindy@lindyursolaw.com


### __CERTIFICATE  OF SERVICE__

I hereby certify that a copy of the foregoing was filed and served electronically on all parties of record, on this 15th day of April in the year of our Lord 2022.

_____/s/_____
Lindy R. Urso