# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ...................................................................................................... 2

FACTUAL BACKGROUND ....................................................................................... 3

PROCEDURAL HISTORY ........................................................................................ 6

ARGUMENT ............................................................................................................ 8

  I.   Legal Standard ................................................................................................ 8

  II.  The Court Should Deny Defendants' Motion to Dismiss Count Thirty-Four (Obstruction of an Official Proceeding, in Violation of 18 U.S.C. § 1512) ................................................. 9

    A.   The certification of the Electoral College vote is an official proceeding ................... 9

      1.   Background ................................................................................................ 10

      2.   Certification of the Electoral College vote is a proceeding before the Congress ... 11

      3.   The proceeding before the Congress is not limited to proceedings "affecting the administration of justice" ................................................................................. 15

      *4.*   *Yates v. United States* and legislative history do not limit the meaning of Section 1512(c)(2) to proceedings involving document destruction or "the administration of justice" ............................................................................................................... 17

    B.   The word "corruptly" in 18 U.S.C. § 1512(c)(2) is not unconstitutionally vague and the defendant had fair notice that his actions are punishable under 18 U.S.C. § 1512(c)(2) 22

    C.   The defendants' conduct falls squarely within the scope statute, despite the ruling in *United States v. Garrett Miller*. ................................................................................ 25

      1.   The Court's ruling erroneously applied the rule of lenity ........................................ 29

        a.   Section 1512(c)(2)'s text and structure make clear that it covers obstructive conduct "other" than the document destruction covered in Section 1512(c)(1)...............................................................................................30

        b.   Other tools of statutory interpretation do not undermine that straightforward reading...............................................................................37

# TABLE OF AUTHORITIES

**Cases**

*Arthur Andersen v. United States*,
   544 U.S. 696 (2005) ........................................................................................ 23, 40

*Babb v. Wilkie*,
   140 S. Ct. 1168 (2020) ........................................................................................ 17

*Barber v. Thomas*,
   560 U.S. 474, 488 (2020) .................................................................................... 30

*Begay v. United States*,
   553 U.S. 137 (2008) ..................................................................................... passim

*Catrino v. United States*,
   176 F.2d 884, 887 (9th Cir. 1949 ........................................................................ 39

*Freytag v. Comm'r*,
   501 U.S. 868, 877 (1991)) ................................................................................... 17

*Hubbard v. United States*,
   514 U.S. 695 (1995) ............................................................................................. 17

*Johnson v. United States*,
   576 U.S. 591 (2015) ...................................................................................... 21, 35

*Kisor v. Wilkie*,
   139 S. Ct. 2400, 2415 (2019) .............................................................................. 29

*Levin v. United States*,
   568 U.S. 503 (2013) ............................................................................................. 17

*Liparota v. United States*,
   471 U.S. 419, 427 (1985) ................................................................................... 29

*Loughrin v. United States*,
   573 U.S. 351 (2014) ............................................................................................. 32

*Marks v. United States*,
   430 U.S. 188 (1977) ............................................................................................. 20

*Marx v. Gen. Revenue Corp*,
   568 U.S. 371, 386 (2013) .................................................................................... 40

*Muscarello v. United States*,
   524 U.S. 125, 138-39 (1998) .............................................................................. 30

*Ocasio v. United States,*
    578 U.S. 282 (2016)..................................................................................................... 30

*Pasquantino v. United States,*
    544 U.S. 349 (2005)..................................................................................................... 33

*Republic of Iraq v. Beaty,*
    556 U.S. 848 (2009)..................................................................................................... 33

*Russello v. United States,*
    464 U.S. 16 (1983)....................................................................................................... 15

*United States v. Aguilar,*
    515 U.S. 593 (1995).............................................................................................. 25, 37

*United States v. Andries,*
    21-cr-93 (RC), 2022 WL 768684 (D.D.C. Mar. 14, 2022);...................................... 7 passim

*United States v. Ballestas,*
    795 F. 3d 138 (D.C. Cir. 2015)...................................................................................... 7

*United States v. Bass,*
    404 U.S. 336, 348 (1971) ........................................................................................... 29

*United States v. Bingert,*
    21-cr-91 (RCL), ECF No. 67 (D.D.C. May 25, 2022)........................................... passim

*United States v. Bowdoin,*
    770 F. Supp. 2d 142 (D.D.C. 2011)................................................................................ 7

*United States v. Bowser*
    964 F.3d 26 (D.C. Cir. 2020)........................................................................................ 15

*United States v. Brenson,*
    104 F.3d 1267 (11th Cir. 1997) ................................................................................... 22

*United States v. Burge,*
    711 F.3d 803 (7th Cir. 2013) ....................................................................................... 37

*United States v. Caldwell,*
    21-cr-28 (APM), 2021 WL 6062718 (D.D.C. Dec. 20, 2021).............................. passim

*United States v. Carson,*
    560 F.3d 566, 584 (6th Cir. 2009) .......................................................................... 20, 31

*United States v. Cervantes,*
    No. 16-10508, 2021 WL 2666684 (9th Cir. June 29, 2021).................................... 20

*United States v. Dunn,*

434 F. Supp. 2d 1203 (M.D. Ala. 2006) ................................................................ 11

*United States v. Edwards*,
869 F.3d 490 (7th Cir. 2017) ................................................................. 22, 23

*United States v. Ermoian*,
752 F.3d 1165 (9th Cir. 2013) ........................................................ 10, 11, 12

*United States Firtash*,
392 F.Supp.3d 872, 887 (N.D. Ill. 2019) ............................................. 29

*United States v. Friske*,
640 F.3d 1288 (11th Cir. 2011) ................................................................ 23

*United States v. Gordon*,
710 F.3d 1124 (10th Cir. 2013) ................................................................ 23

*United States v. Hale-Cusanelli*,
21-cr-37 (TNM) (D.D.C. May 6, 2022) .............................................. 2, 28

*United States v. Hite*
769 F.3d 1154 (D.C. Cir. 2014) ............................................................ 2, 28

*United States v. Hutcherson*,
05-cr-39, 2006 WL 270019, at *2 (W.D. Va. Feb. 3, 2006)....................... 37

*United States v. Kelley*,
36 F.3d 1118, 1127 (D.C. Cir. 1994) ......................................................... 12

*United States v. Kelly*,
147 F.3d 172 (2d Cir. 1998) ..................................................................... 31

*United States v. Matthews*,
505 F.3d 698 (7th Cir. 2007) ................................................................... 32

*United States v. McHugh*,
21-cr-453 (JDB), 2022 WL 296304 (D.D.C. Feb. 1, 2022)............................. passim

*United States v. McHugh*,
21-cr-453 (JDB), 2022 WL 1302880 (D.D.C. May 2, 2022) ............................ 1, 27

*United States v. Miller*,
21-cr-119 (CJN), 2022 WL 823070 (D.D.C. March 7, 2022) ......................... passim

*United States v. Montgomery*,
21-cr-46 (RDM), 2021 WL 6134591 (D.D.C. Dec. 28, 2021) ......................... passim

*United States v. Morrison*,

98 F.3d 619 (D.C. Cir. 1996) ................................................................................ 22

*United States v. Mostofsky,*
21-cr-138 (JEB), 2021 WL 6049891 (D.D.C. Dec. 21, 2021) ........................... passim

*United States v. Nasir*,
17 F.4th 459, 472 (3d Cir. 2021) ........................................................................ 29

*United States v. Nordean,*
21-cr-175 (TJK), 2021 WL 6134595 (D.D.C. Dec. 28, 2021) ........................... passim

*United States v. Perez,*
575 F.3d 164 (2d Cir. 2009) *cert. denied*, 140 S. Ct. 1106 (2020) .................... 11, 12

*United States v. Petruk,*
781 F.3d 438 (8th Cir. 2015) ............................................... 19, 31, 36, 37

*United States v. Phillips,*
583 F.3d 1261 (10th Cir. 2009) ........................................................... 19, 31

*United States v. Poindexter,*
951 F.2d 369 (D.C. Cir. 1991) ........................................................... passim

*United States v. Puma,*
21-cr-454 (PLF), 2022 WL 823079 (D.D.C. Mar. 19, 2022) ........................... passim

*United States v. Ramos*,
537 F.3d 439 (5th Cir. 2008) ............................................................. 11, 12

*United States v. Reffitt,*
21-CR-32 (DLF), 2022 WL 1404247 (D.D.C. May 4, 2022) ........................... 27, 42

*United States v. Ring,*
628 F. Supp. 2d 195 (D.D.C. 2009) ........................................................... 19, 33

*United States v. Sandlin,*
21-cr-88 (DLF), 2021 WL 5865006 (D.D.C. Dec. 10, 2021) ........................... passim

*United States v. Singleton,*
06-cr-80 (DLF), 2006 WL 1984467 (S.D. Tex. July 14, 2006) ........................... 37

*United States v. Shotts*,
145 F.3d 1289 (11th Cir. 1998) ........................................................... 22

*United States v. Sutherland,*
921 F.3d 421 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 1106 (2020) ........................... 11

*United States v. Volpendesto,*
746 F.3d 273 (7th Cir. 2014) ........................................................... 19, 31, 37

*United States v. X-Citement Video, Inc.,*
   513 U.S. 64, 69 (1994) ........................................................................ 42

*United States v. Young,*
   916 F.3d 368 (4th Cir.), *cert. denied*, 140 S. Ct. 113 (2019) ............... 23, 29

*Wooden v. United States,*
   142 S. Ct. 1063, 1074 (2022) ............................................. 29, 30, 34

*Yates v. United States,*
   574 U.S. 528 (2015) ................................................................. passim

*Young v. United States,*
   943 F.3d 460 (D.C. Cir. 2019) ............................................... 30

## Statutes and Constitutional Provisions

U.S. Const. art. II, § 1, cl. 3 .......................................................... 9

U.S. Const amend. XII. .................................................................. 9

3 U.S.C. § 15 ............................................................................... 9

3 U.S.C. § 16 ............................................................................... 9

3 U.S.C. § 17 ............................................................................... 9

3 U.S.C. § 18 ............................................................................... 9

18 U.S.C. § 1505 ................................................................. passim

18 U.S.C. § 1512(c)(2) ....................................................... passim

18 U.S.C. § 1515 ................................................................. passim

18 U.S.C. § 1515(a)(1) .............................................................. 11

18 U.S.C. § 1515(a)(1)(B) .................................................. passim

18 U.S.C. § 1515(b) .................................................................. 22

26 U.S.C. § 7212(a) .................................................................. 22

Pub. L. 109-177, Title VI, Sec. 602, 120 Stat. 192 (Mar. 9, 2006) ............................................. 42

Victim and Witness Protection Act of 1982, Pub. L. No. 97-291, 96 Stat. 1248 ....................... 14

Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, § 1102, 116 Stat. 745, 807 .................. passim

**Other Authorities**

148 Cong. Rec. S6550 (daily ed. July 10, 2002) ..................................................... 17, 18

S. Rep. No. 107-146, at 2 (2002) ........................................................................ 17, 18

S. Rep. No. 97-532, at 17 (1982) ............................................................................ 11

**Rules**

Fed. R. Crim. P. 7(c)(1) ............................................................................................ 7

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 21-CR-40 (TNM)** |
| | **:** | |
| **PATRICK MCCAUGHEY, et. al.,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**GOVERNMENT'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO
DISMISS COUNTS THIRTY-FOUR OF THE FIFTH SUPERSEDING INDICTMENT**

## INTRODUCTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this omnibus opposition to the defendants' motions to dismiss Count Thirty-Four in the Fifth Superseding Indictment. ECF No. 179. Specifically, the defendants challenge the count charging them with Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2). ECF Nos. 253, 255, 259, 262, 268, 269, 271, 278, and 279.

Several courts in this district have recently written opinions rejecting many, if not all, of the challenges defendants raise here. *See United States v. Sandlin,* 21-cr-88 (DLF), 2021 WL 5865006 (D.D.C. Dec. 10, 2021) *United States v. Caldwell*, 21-cr-28 (APM), 2021 WL 6062718 (D.D.C. Dec. 20, 2021); *United States v. Mostofsky*, 21-cr-138 (JEB), 2021 WL 6049891 (D.D.C. Dec. 21, 2021; *United States v. Montgomery,* 21-cr-46 (RDM), 2021 WL 6134591 (D.D.C. Dec. 28, 2021); *United States v. Nordean,* 21-cr-175 (TJK), 2021 WL 6134595 (D.D.C. Dec. 28, 2021); *United States v. McHugh,* 21-cr-453 (JDB), 2022 WL 296304 (D.D.C. Feb. 1, 2022); *United States v. Andries*, 21-cr-93 (RC), 2022 WL 768684 (D.D.C. Mar. 14, 2022); *United States v. Puma*, 21-cr-454 (PLF), 2022 WL 823079 (D.D.C. Mar. 19, 2022); *United States v. McHugh*, 21-cr-453 (JDB), 2022 WL 1302880 (D.D.C. May 2, 2022); *United States v. Bingert*, 21-cr-91 (RCL), ECF No. 67 (D.D.C. May 25, 2022.[1] Indeed, this Court has denied motions to dismiss the 18 U.S.C. § 1512(c)(2) charge in *United States v. Hale-Cusanelli*, 21-cr-37 (TNM) (D.D.C. May 6, 2022) There is no reason for this Court to differ here. The Court should deny the motions.

---

[1] *But see*, *United States v. Miller*, 21-cr-119 (CJN), 2022 WL 823070 (D.D.C. March 7, 2022)(granting motion to dismiss obstruction count). The government gives fulsome discussion, *infra* at 24, to how this opinion, and its adoption in *United States v. Fischer*, 21-CR-234 (CJN), 2022 WL 782413, at *4 (D.D.C. Mar. 15, 2022), is an incorrect interpretation of 18 U.S.C. § 1512(c)(2) that this Court need not follow here.

## **FACTUAL BACKGROUND**

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate ("the Joint Session") convened in the United States Capitol building ("the Capitol") to certify the vote of the Electoral College of the 2020 U.S. Presidential Election ("the Electoral College vote"). The Capitol is secured 24 hours a day by United States Capitol Police ("Capitol Police") and permanent and temporary barriers that restrict access to the Capitol grounds and building. On January 6, 2021, only authorized individuals with appropriate identification were allowed on the Capitol grounds or inside the Capitol. The First Street pedestrian entrance was guarded by Capitol Police. Prominent signs posted on metal barriers at the pedestrian entrance and other locations stated, "AREA CLOSED By order of the United States Capitol Police Board."

At 1:00 p.m., the Joint Session convened in the Capitol to certify the Electoral College vote. Vice President Michael R. Pence, in his constitutional duty as President of the Senate, presided over the Joint Session. At 2:20 p.m., members of the House and Senate (including Vice President Pence)—who had withdrawn to separate chambers to resolve an objection—were evacuated from their respective chambers as the result of rioters' breach of the Capitol. The Joint Session was halted while Capitol Police and other law-enforcement officers worked to restore order and clear the Capitol building and grounds of the unlawful occupants.

Each of the defendants challenging this indictment—Patrick McCaughey, Tristan Stevens, David Judd, Robert Morss, Geoffrey Sills, Stephen Cappuccio, and David Mehaffie—joined the mob that overwhelmed law enforcement on the West Front of the U.S. Capitol and forced their way into the "tunnel" created by the structures present on the Lower West Terrace, meant to form the Inauguration stage for the Inauguration of President Joe Biden on January 20, 2021.

At approximately 2:09 p.m., defendant Morss was challenging officers below the Inaugural

3

stage, in an attempt to get past the police line. Specifically, defendant Morss grabbed a Metropolitan Police Department officer's baton and attempted to rip it away. About five minutes later, defendant Morss reached through the crowd and grabbed a fence held by another Metropolitan Police Department officer—as the officer tried to keep the crowd back—ultimately ripping the fence out of the officer's hands. At approximately 2:33 p.m., defendant Morss lunged at a third Metropolitan Police Department officer, and struggled with him over a visor. Defendant Morss then made his way up to the Inaugural stage.

At approximately 2:40 p.m., defendant Mehaffie was the first defendant to enter the tunnel at the back of the Inaugural stage, and make it to the double doors, which granted access to the Capitol building. Mehaffie then pounded on the glass doors, which were ultimately broken by another rioter. Police inside the building then formed line blocking entrance to the building, as the tunnel swelled with members of the mob. While other rioters entered the tunnel, defendant Mehaffie positioned himself on an elevated platform at the archway to the tunnel and began directing and assisting other rioters entering and exiting the tunnel and fighting against the line of officers inside.   During the 26 minutes that defendant Mehaffie directed other rioters, members of the mob conducted numerous assaults against the line of officers inside, particularly those who participated in a heave-ho against the police line, many of whom entered the tunnel at Mehaffie's direction and encouragement.

Defendants Sills, McCaughey, and Stevens were among those who entered the tunnel shortly after 2:40 p.m. At approximately 2:43 p.m., defendant Sills ripped a police baton away from a Metropolitan Police Department officer, who was in the police line that had been established near the now-broken double doors leading into the Capitol. At approximately 2:49 p.m., both defendant McCaughey and defendant Stevens had made it to the front of the police line

as well. Between 2:49 p.m. and 3:15 p.m., these three defendants assaulted several law enforcement officers, pushing against the line in a heave-ho effort to get into the building, and using various weapons in their assaults. Defendant Sills used the baton he had stolen from an officer to strike at those in the police line. Defendant McCaughey gained possession of a clear police riot shield, and used it to push against the police line, crushing a Metropolitan Police Department officer in the door. Defendant Stevens then used a clear riot shield to strike a U.S. Capitol Police officer in the face.

Closer to 3:00 p.m., defendants Judd and Cappuccio entered the tunnel. Defendant Judd encouraged other rioters to create a shield wall, and then lit a firecracker and tossed it towards the police line. Defendant Cappuccio then pushed forward through the crowd to the police line, bracing and assisting the crowd in an effort to break through and into the building. Defendant Cappuccio ultimately ended up in front of the same Metropolitan Police Department officer that defendant McCaughey crushed in the door; defendant Cappuccio grabbed the officer's gas mask, violently yanking on it in an attempt to rip it off. Defendant Cappuccio left the tunnel with a baton in his hand that he did not have when he initially entered the tunnel.

Law enforcement was able to push rioters out of the tunnel and on to the Lower West Terrace at approximately 3:18 p.m., reestablishing the police line at the mouth of the tunnel. For the next two hours, officers continued to battle the rioters who remained, and the Lower West Terrace was not cleared until after 5:00 p.m. At approximately 8:00 p.m., the Joint Session reconvened, presided over by Vice President Pence, who had remained within the Capitol building in a secure location throughout the disruption of the proceeding. The Joint Session of Congress lasted until the early hours of January 7, 2021, when the electoral ballots were fully counted, and

the Electoral College vote was certified.

## PROCEDURAL HISTORY

On January 29, 2021, the grand jury returned an indictment charging defendant Patrick McCaughey with various charges for his conduct at the U.S. Capitol on January 6, 2021. ECF No. 5. The grand jury returned First Superseding Indictment charging Tristan Stevens as a co-defendant with Patrick McCaughey on March 4, 2021. ECF No. 19. On April 16, 2021, the grand jury returned the Second Superseding Indictment, joining David Judd and Christopher Quaglin to the case. ECF No. 37. On June 16, 2021, the grand jury returned the Third Superseding Indictment, adding Robert Morss and Geoffrey Sills. ECF No 68. The grand jury returned the Fourth Superseding Indictment on August 4, 2021, adding David Mehaffie, Steven Cappuccio and Federico Klein as defendants in this action. ECF No. 102. On December 1, 2021, the grand jury charged the nine co-defendants in the Fifth Superseding Indictment, which is the currently operative charging document for this matter. ECF No. 179. That document charges fifty-three counts, including:

- Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1) and (b) (Counts One, Two, Three, Seven, Eight, Nine, Ten, Eleven, Twelve, Fourteen, Fifteen, Sixteen, Seventeen, Eighteen, Nineteen, Twenty-One, Twenty-Two, Twenty-Three, Twenty-Four, Twenty-Five, Twenty-Six, Twenty-Seven, Twenty-Eight, Twenty-Nine, Thirty-One, Thirty-Two and Thirty-Three);

- Robbery, in violation of 18 U.S.C. § 2111 (Counts Four, Five, Six, Thirteen, Twenty, and Thirty);

- Obstruction of an Official Proceeding, Aiding and Abetting, in violation of 18 U.S.C. § 1512(c)(2) (Count Thirty-Four);

- Civil Disorder, in violation of 18 U.S.C. § 231(a)(3) (Count Thirty Five);

- Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Thirty-Six, Thirty-Seven, Thirty-Eight, Thirty-Nine, Forty, Forty-One, Forty-Two, and Forty-Three);

- Engaging in Physical Violence in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(4) (Count Forty-Four, Forty-Five, Forty-Six, Forty-Seven, Forty-Eight, Forty-Nine, Fifty, Fifty-One);

- Disorderly Conduct in a Capitol Building or Grounds, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Fifty-Two); and

- Act of Physical Violence in the Capitol Building or Grounds, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Fifty-Three).

ECF No. 179.

Consistent with the Scheduling Order in this case (ECF No. 232), the following Fed. R. Crim. P. 12 motions to dismiss were filed by various defendants:

- On April 14, 2022, defendant Cappuccio filed a motion to dismiss Count Thirty-Four, charging him and his co-defendants with Obstruction of an Official Proceeding, Aiding and Abetting in violation of 18 U.S.C. § 1512(c)(2), and 2. ECF No. 253 ("Cappuccio Mot.").

- Defendant Judd also filed a motion to dismiss Count Thirty-Four, charging him and his co-defendants with Obstruction of an Official Proceeding, Aiding and Abetting, in violation of 18 U.S.C. § 1512(c)(2), and 2. ECF No. 255. ("Judd Mot.")

- On April 16, 2022, defendant McCaughey also filed a motion to dismiss Count Thirty-Four, charging him and his co-defendants with Obstruction of an Official Proceeding, Aiding and Abetting, in violation of 18 U.S.C. § 1512(c)(2), and 2. ECF No. 259.

("McCaughey Mot.")

- On April 19, 2022, defendant Stevens filed a motion to adopt all of defendant Judd's motions to dismiss, including for Count Thirty-Four, (ECF No. 262), which this Court granted. Minute Order April 19, 2022.

- On April 20, 2022, Defendant Mehaffie filed a motion to adopt defendant Judd's and defendant McCaughey's motions to dismiss Count Thirty-Four, (ECF No. 269), which this Court granted. Minute Order April 20, 2022.

- On April 21, 2022, Defendant McCaughey filed a motion to adopt all of defendant Judd's motions to dismiss, including for Count Thirty-Four, (ECF No. 271), which this Court granted. Minute Order April 22, 2022.

- On April 25, 2022, Defendant Morss (ECF No. 278) and Defendant Sills (ECF No. 279) each filed a motion to adopt defendant Judd's motion to dismiss Count Thirty-Four, which this Court granted. Minute Order April 25, 2022.

The government now opposes each of these motions.

## **ARGUMENT**

Defendants' challenges to Count Thirty-Four, Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2)), all lack merit.

## I.   **Legal Standard**

Federal Rule of Criminal Procedure 7(c)(1) states, in relevant part, that "[t]he indictment … must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An "indictment's main purpose is to inform the defendant of the nature of the accusation against him." *United States v. Ballestas*, 795 F. 3d 138, 148–49 (D.C. Cir. 2015) (citation omitted). Because dismissal of an indictment "directly encroaches upon the fundamental role of the grand jury," however, "dismissal is granted only in

unusual circumstances." *Ballestas*, 795 F. 3d at 148 (internal quotation marks omitted). "An indictment must be viewed as a whole and the allegations must be accepted as true in determining if an offense has been properly alleged." *United States v. Bowdoin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011). The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. *Id.*

## II. The Court Should Deny Defendants' Motion to Dismiss Count Thirty-Four (Obstruction of an Official Proceeding, in Violation of 18 U.S.C. § 1512)

Defendants argue that Count Thirty-Four, charging a violation of 18 U.S.C. § 1512(c)(2), should be dismissed for three primary reasons: 1) Congress's certification of the Electoral College vote is not an "official proceeding," 2) the statute is unconstitutionally vague as applied, and 3) the conduct of these defendants does not fall within the scope of the statute. As set forth below, and as this Court and other judges in his district have held, these arguments lack merit.

### A. The certification of the Electoral College vote is an official proceeding

Section 1512(c)(2) of Title 18 of the U.S. Code provides that "[w]hoever corruptly . . . obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both." The defendants argue that Congress's certification of the Electoral College vote on January 6, 2021, does not qualify as an "official proceeding" for purposes of 18 U.S.C. § 1512(c)(2) because it does not concern the "administration of justice." ECF No. 253 (Cappuccio Mot.), at 16–17; ECF No. 255 (Judd Mot.), at 9-11; ECF No. 259 (McCaughey Mot.), at 2, 5, and 10. Their arguments are contrary to the plain text of the statute and every decision in this district considering the issue. *See Sandlin,* 2021 WL 5865006, at *3–*10; *Caldwell*, 2021 WL 6062718, at *4–*7; *Mostofsky*, 2021 WL 6049891, at *9–*10; *Montgomery*, 2021 WL 6134591, at *4–*10; *Nordean,* 2021 WL 6134595, at *4–*6; *McHugh,* 2022 WL 296304, at *7-*8; *Miller,* 2022 WL 823070, at *5; *Andries,* 2022 WL 768684,

at *6- *7 ; *Puma*, 2022 WL 823079, at *7 - *9;   *Bingert*, 21-cr-91, ECF No. 67, at 7-8.

### 1.     Background

The Constitution and federal statutory law require that both Houses of Congress meet to certify the results of the Electoral College vote. Two separate provisions in the Constitution mandate that the Vice President while acting as the President of Senate "shall, in the Presence of the Senate and House of Representatives, open all the Certificates, and the Votes shall then be counted." U.S. Const. art. II, § 1, cl. 3; U.S. Const amend. XII. Under the Electoral Act of 1887, a Joint Session of the Senate and the House of Representatives must meet at "the hour of 1 o'clock in the afternoon" on "the sixth day of January succeeding every meeting of the electors." 3 U.S.C. § 15. Section 15 details the steps to be followed: the President of the Senate opens the votes, hands them to two tellers from each House (who are required to read them "in the presence and the hearing of the two Houses"), ensures the votes are properly counted, and then opens the floor for written objections, which must be signed "by at least one Senator and one Member of the House of Representatives." *Id.* The President of the Senate is empowered to "preserve order" during the Joint Session. 3 U.S.C. § 18. Upon a properly made objection, the Senate and House of Representatives withdraw to consider the objection; each Senator and Representative "may speak to such objection . . . five minutes, and not more than once." 3 U.S.C. § 17. The Electoral Act, which specifies where within the chamber Members of Congress are to sit, requires that the Joint Session "not be dissolved until the count of electoral votes shall be completed and the result declared." 3 U.S.C. § 16.

The obstruction statute with which the defendant is charged prohibits corruptly obstructing, influencing, or impeding any official proceeding. 18 U.S.C. § 1512(c)(2). An official proceeding for purposes of § 1512(c)(2) is defined, in relevant part, as "a proceeding before the Congress." 18 U.S.C. § 1515(a)(1)(B) (emphasis added).

**2.     Certification of the Electoral College vote is a proceeding before the Congress**

The certification of the Electoral College vote as set out in the Constitution and federal statute is a "proceeding before the Congress," 18 U.S.C. § 1515(a)(1)(B), and, therefore, an "official proceeding" for purposes of 18 U.S.C. § 1512(c)(2). That conclusion flows principally from the obstruction statute's plain text. *See Caldwell*, 2021 WL 6062718 at * 4 ("A straightforward reading of that definition easily reaches the Certification of the Electoral College vote."). Skipping past the text, the defendants argue that Congress's intent and other language and structural features of the obstruction statute import a requirement that the proceeding be adversarial in nature and related to the administration of justice. ECF No. 253 (Cappuccio Mot.), at 16-17; ECF No. 255 (Judd Mot.), at 9; ECF No. 259 (McCaughey Mot.), at 10. That argument is incorrect.

Understanding what qualifies as an official proceeding "depends heavily on the meaning of the word 'proceeding'" because "official proceeding" is defined "somewhat circularly" as, among other things, a congressional "proceeding." *See United States v. Ermoian*, 752 F.3d 1165, 1169 (9th Cir. 2013). The certification of the Electoral College vote constitutes a "proceeding" under any interpretation of that term. In its broadest and most "general sense," a proceeding refers to "[t]he carrying on of an action or series of actions; action, course of action; conduct, behavior." *Id.* (quoting *Proceeding,* Oxford English Dictionary, *available at* http://www.oed.com). The defendants do not meaningfully contend that the certification of the Electoral College vote, which involves a detailed "series of actions" outlining how the vote is opened, counted, potentially objected to, and ultimately certified, is not a proceeding—and indeed an official proceeding— under that broad definition. And there is good reason to construe "proceeding" as used in 18 U.S.C. § 1515 broadly. While subsection (B) refers only to proceedings "before the Congress," other subsections encompass judicial proceedings, grand jury proceedings, any legally authorized

11

proceedings before federal government agencies, and proceedings "involving the business of insurance." 18 U.S.C. § 1515(a)(1); *see* S. Rep. No. 97-532, at 17 (1982) (noting that the "term 'official proceeding'" in the obstruction statute is "defined broadly").

But even if the "legal—rather than the lay—understanding" of proceeding governs Section 1515's interpretation, *see Ermoian*, 752 F.3d at 1170, the Electoral College vote certification qualifies. *See Puma*, 2022 WL 823079, at *5 (collecting cases). This narrower definition includes the "business conducted by a court or other official body; a hearing." Black's Law Dictionary, "proceeding" (11th ed. 2019). Taken with its modifier "official," the term proceeding thus "connotes some type of formal hearing." *Ermoian*, 752 F.3d at 1170; *see United States v. Ramos*, 537 F.3d 439, 462 (5th Cir. 2008) (the "more formal sense" of "official proceeding" is "correct in the context of § 1512"). For example, in cases assessing whether a law enforcement investigation amounts to an "official proceeding" as defined in Section 1515—including the cases relied upon by the defendant—courts analyze the degree of formality involved in an investigation. *See, e.g.*, *United States v. Sutherland*, 921 F.3d 421, 426 (4th Cir. 2019) (holding that FBI investigation was not an "official proceeding" because that term "implies something more formal than a mere investigation"), *cert. denied*, 140 S. Ct. 1106 (2020); *Ermoian*, 752 F.3d at 1170–72 (same); *United States v. Perez*, 575 F.3d 164, 169 (2d Cir. 2009) (holding that internal investigation conducted by a review panel within the Bureau of Prisons was an "official proceeding" because the review panel's "work [was] sufficiently formal"); *Ramos*, 537 F.3d at 463 (holding that internal investigation conducted by Customs and Border Patrol was not an "official proceeding" because that term *"*contemplates a formal environment"); *United States v. Dunn*, 434 F. Supp. 2d 1203, 1207 (M.D. Ala. 2006) (holding that investigation conducted by Bureau of Alcohol, Tobacco, and Firearms was not an "official proceeding" because that term encompasses "events that are best

12

thought of as hearings (or something akin to hearings)"); *see also United States v. Kelley*, 36 F.3d 1118, 1127 (D.C. Cir. 1994) (holding that a "*formal* investigation" conducted by the Officer of the Inspector General at the Agency for International Development qualified as a "proceeding" for purposes of 18 U.S.C. § 1505) (emphasis added); *Montgomery*, 2021 WL 6134591, at *9 (concluding that "the most sensible reading of Section 1515 is that the term 'official proceeding' refers to "the business conducted by an official body that has formally convened for the purpose of conducting that business") (citation omitted).

Defendants cite *Ermoian* and *Ramos,* but claim that what these cases actually require is that the conduct interfere with the "administration of justice." ECF No. 253 (Cappuccio Mot.), at 15-17; ECF No. 255 (Judd Mot.), at 9-11. Defendants misinterpret their own citations, which hold that ongoing law-enforcement or internal agency investigations are not "official proceedings" not because they do not involve the "administration of justice," but because "[t]hey are not formal hearings conducted before official bodies." *Sandlin*, 2021 WL 5865006, at *3. Moreover, none of these cases involved "a proceeding before the Congress," and they do not undermine the government's position because "an ongoing law enforcement investigation of a criminal enterprise bears no resemblance, as a matter of form or content, to the official process mandated by the Twelfth Amendment and the Electoral Count Act for certifying the electoral vote for President and Vice President." *Montgomery*, 2021 WL 6134591, at *6.

The formality involved in the certification of the Electoral College vote places it "comfortably within the category" of an official proceeding. *See Perez*, 575 F.3d at 169. Few events are as solemn and formal as a Joint Session of the Congress. That is particularly true of the certification of the Electoral College vote, which is expressly mandated by the Constitution and federal statute.

Required by law to begin at 1 p.m. on the January 6 following a presidential election, the certification of the Electoral College vote is both a "hearing" and "business conducted by . . . [an] official body." *See* Black's Law Dictionary, *supra*. The Vice President, as the President of the Senate, serves as the "presiding officer" over a proceeding that counts votes cast by Electors throughout the country in presidential election. 3 U.S.C. § 15. As in a courtroom, Members may object, which in turn causes the Senate and House of Representatives to "withdraw" to their respective chambers so each House can render "its decision" on the objection. *Id.* And just as the judge and parties occupy specific locations in a courtroom, so too do the Members within the "Hall." *See* 3 U.S.C. § 16 (describing where various officials must sit). The certification, moreover, must terminate with a decision: no recess is permitted until the "the count of electoral votes" is "completed," and the "result declared." *Id.* In short, the certification of the Electoral College vote is a "proceeding before the Congress." *See* 18 U.S.C. § 1515(a)(1)(B).[2] Judges in this district have accordingly concurred. *See, e.g., Montgomery,* 2021 WL 6134591, at *10; *Sandlin,* 2021 WL 5865006, at *3–*4; *Mostofsky*, 2021 WL 6049891, at *10 (concluding that the certification of the Electoral College is an official proceeding within the meaning of 18 U.S.C. §§ 1515, 1512(c)(2)); *Caldwell*, 2021 WL 6062718 at * 4 ("The Certification of the Electoral College vote thus meets the definition of an 'official proceeding.'"); *Nordean,* 2021 WL 6134595 at *5 ("the certification

---

[2]     Defendants contend that the certification is "merely ceremonial," an argument that should come as a surprise to the thousands of rioters who descended on the Capitol believing otherwise. ECF No. 255 (Judd Mot.), at 11. Chief Judge Howell recently rejected this claim in an oral ruling denying a January 6 defendant's motion to dismiss. *United States v. DeCarlo*, 1/21/22 Tr. at 35–36. So did Judge Bates. *McHugh,* 2022 WL 296304, at *9. Contrary to defendants' arguments, "it is inaccurate to characterize the Certification that occurred on January 6 as a purely ministerial, legislative vote-counting event." *Caldwell*, 2021 WL 6062718, at *7 (citation omitted). That is because, as explained above, Congress convenes to render judgment on the votes cast by electors; parties may lodge objections, and each House must consider the objection and make a decision whether to overrule or sustain it.

is therefore a 'series of actions' that requires 'some formal convocation,' making it a 'proceeding before the Congress,' 18 U.S.C. §1515(a)(1)(B), and thus an 'official proceeding.'"); *Andries*, 2022 WL 768684, at *7 ( holding a "'proceeding before the Congress,' 18 U.S.C. § 1515(a)(1)(C), extends to formal convocations of Congress for the purpose of conducting official business…and that the January 6th, 2021 joint session of Congress to certify the electoral vote was such a proceeding.")

### 3. The proceeding before the Congress is not limited to proceedings "affecting the administration of justice"

The defendants improperly ask this Court to add a limitation to the definition and interpret "official proceeding" to mean only proceedings that "resemble a formal tribunal." ECF No. 255 (Judd Mot.), at 10–12. As an initial matter, it is difficult to imagine a proceeding more "official" than a constitutionally and statutorily prescribed Joint Session of Congress.

Defendants claim that the statute's title, "Tampering with a victim, witness, or informant" (ECF No. 253 (Cappuccio Mot.), at 16; ECF No. 259 (McCaughey Mot.), at 1-2), supports their position, but that title pre-dates the passage of Section 1512(c)(2) by almost 20 years. *See Victim and Witness Protection Act of 1982 (VWPA), Pub. L. No. 97-291, § 4(a), 96 Stat. 1248, 1249–50.* "When Congress enacted Section 1512(c)(2), that title was already included in the codification." *Montgomery*, 2021 WL 6134591, at *15 (citing 18 U.S.C. § 1512 (2000)). "The title of the section of the legislation that added Section 1512(c), in contrast, was 'Tampering with a record *or otherwise impeding an official proceeding*.'" *Id.* (citing Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, § 1102, 116 Stat. 745, 807 (emphasis added)). As Judge Moss found, "Section 1512(c)(2)'s title in the U.S. Code is unenlightening, and the title under which it was enacted arguably supports a broader reading of the statute." *Id.*

Defendants' argument finds no textual support when applied to Section 1515(a)(1)(B),

moreover, which speaks broadly of a proceeding "before the Congress." Had Congress wanted to import a definition that more closely resembled a quasi-adjudicative setting, it needed look only a few provisions away to 18 U.S.C. § 1505, which criminalizes obstruction of "the due and proper administration of the law under which any pending proceeding is being had" by a federal department or agency.   Further, Section 1505 expressly criminalizes obstruction of "any inquiry or investigation [that] is being had by" Congress, including by congressional committees and subcommittees. 18 U.S.C. § 1505; *see United States v. Bowser*, 964 F.3d 26, 31 (D.C. Cir. 2020). If Congress wished to limit the obstruction prohibition under Section 1505 to congressional investigations, it could have done so in the text of Section 1515(a)(1)(B). *See Russello v. United States,* 464 U.S. 16, 23 (1983) ("We refrain from concluding here that the differing language in the two subsections has the same meaning in each. We would not presume to ascribe this difference to a simple mistake in draftsmanship.") But "Congress did not select this narrow construct when it enacted section 1512(c)." *Caldwell*, 2021 WL 6062718, at *5. Instead, Congress enacted broader language— "a proceeding before the Congress"—to cover a broader range of proceedings than the "inquir[ies] and investigation[s]" envisioned in Section 1505. "That Congress decided to incorporate into section 1512(c) an existing definition of 'official proceeding' that broadly includes 'a proceeding before Congress,' as opposed to one limited to its 'power of inquiry,' is therefore consequential." *Id.*

Defendants argue that other provisions in Chapter 73 relate to the administration of justice, such as 18 U.S.C. § 1503 (influencing or injuring a juror), and that Section 1512(c)(2) should be similarly limited. ECF No. 253 (Cappuccio Mot.), at 17; ECF No. 259 (McCaughey Mot.), at 2. This only proves the government's point: Congress knows how to draft statutes that relate to the administration of justice, and it did not do so here. Even *Yates v. United States,* 574 U.S. 528

(2015), upon which defendant relies, contradicts his argument: the *Yates* plurality observed that Section 1512(c)'s placement within chapter 73 was consistent with its role as a "broad proscription" on obstructive acts, not a narrowed reading. *Yates,* 574 U.S. at 541 (plurality opinion).

Defendants' arguments cannot overcome the plain and unambiguous meaning of the statute. The broader reference to a "proceeding before the Congress" in Section 1515 includes the Electoral College vote certification. All the courts in this district who have recently considered the issue have so held. *See, e.g., Caldwell*, 2021 WL 6062718 at *5 ("Congress did not intend to limit the congressional proceedings protected under section 1512(c) to only those involving its adjudicatory, investigative, or legislative functions. And the court will not add a requirement to the statute that Congress did not see fit to include."); *Sandlin*, 2021 WL 5865006, at *4 ("[T]he Court will not read an "administration of justice" requirement into "official proceeding."); *Puma*, 2022 WL 823079, at *8 ("[I]f Congress had intended to limit Section 1512(c)(2) to adjudicative or court-like proceedings, it would have used different words to do so.").[3]

> **4.      *Yates v. United States* and legislative history do not limit the meaning of Section 1512(c)(2) to proceedings involving document destruction or "the administration of justice"**

The defendants rely on flawed legislative history and misread *Yates v. United States* to argue that the Electoral College vote is not an "official proceeding" under the misguided belief that Section 1512(c), in its entirety, is aimed at "preventing corporations from destroying records relevant to a federal hearing related to the administration of justice." ECF No. 253 (Cappuccio Mot.), at 12, 18; ECF No. 255 (Judd Mot.), at 21. Defendants again err by avoiding Section 1515's

---

[3] Moreover, "even if there were a quasi-adjudicative or quasi-judicial requirement, the certification would 'pass the test.'" *Nordean,* 2021 WL 6134595, at *12. The certification is "one of the very few congressional proceedings that actually is adjudicative." *McHugh,* 21-cr-453, ECF No. 51, at 17.

text. To determine the meaning of a statute, the Court "look[s] first to its language, giving the words used their ordinary meaning." *Levin v. United States*, 568 U.S. 503, 513 (2013) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)). In ordinary parlance, a gathering of the full Congress to certify the Electoral College vote is "a proceeding before the Congress." Because Section 1515(a)(1)(B)'s words "are unambiguous, the judicial inquiry is complete." *See Babb v. Wilkie*, 140 S. Ct. 1168, 1177 (2020) (internal quotation marks omitted). And because construing Section 1512(c)(2) to reach defendant's conduct would neither "frustrate Congress's clear intention" nor "yield patent absurdity," this Court's "obligation is to apply the statute as Congress wrote it." *Hubbard v. United States*, 514 U.S. 695, 703 (1995) (internal quotation marks omitted). The defendants offer no rationale for looking past the statute's plain text to reach for other interpretive tools. *See McHugh,* 2022 WL 296304, at *8 (declining to use "vague notions of a statute's basic purpose" or Congress's "expectations" to impose an "extra-textual limitation" on the actual text of Section 1515 and 1512(c)(2)).

One of those tools is legislative history, which should be given little weight here, and which defendant mischaracterizes, in any event. Defendants quote from the Senate Judiciary Committee's description of the "Act's purpose," as punishing persons "who defraud investors in publicly traded securities or alter or destroy evidence in certain Federal investigations," ECF No. 253 (Cappuccio Mot.), at 18; ECF No. 255 (Judd Mot.), at 7, (quoting S. Rep. No. 107-146, at 2 (2002)), but fail to mention that the version of the legislation the committee was discussing did not include Section 1512(c)(2) (which was added two months after the act was reported out of committee, as a floor amendment). *Montgomery,* 2021 WL 6134591, at *15–*16 (citing 148 Cong. Rec. S6542 (daily ed. July 10, 2002)); *Puma,* 2022 WL 823079, at *8 ("Section 1512(c)(2) was added to the Sarbanes-Oxley bill 'late in the legislative process' as a floor amendment.").

Relatedly, Defendants argue that "nothing in the legislative history" supports that Section 1512(c)(2) applies to the broader purpose that would bring the offense conduct within scope, (ECF No. 253 (Cappuccio Mot.), at 14; ECF No. 255 (Judd Mot.), at 7-8), but they fail to mention that the legislative history regarding Section 1512(c)(2), regarding *any of its applications,* is scant in general and of little value here, given that Section 1512(c)(2) was not added until after the bill was reported out of committee. *See Montgomery,* 2021 WL 6134591, at *15 (observing that "[b]ecause Section 1512(c)(2) did not originate in a committee, there is little legislative history that sheds light on the purposes of that particular provision. And what little history exists should not be given much weight").[4] After Senator Lott offered the floor amendment that included Section 1512(c), Senator Hatch observed that the legislation "broaden[ed]" Section 1512 by permitting prosecution of "an individual who acts alone in destroying evidence." 148 Cong. Rec. S6550 (daily ed. July 10, 2002) (statement of Sen. Hatch). This passing reference is not a basis to limit the statute.

Relying on the Supreme Court's decision in *Yates*, defendants also contend that Section 1512(c)(2) targets only corporate malfeasance and is "aimed at preventing corporations from destroying records relevant to a federal hearing related to the administration of justice." ECF No. 253 (Cappuccio Mot.), at 18. As Judge Moss recently found, *Yates* is "inapt." *Montgomery,* 2021 WL 6134591, at *13–*15 (distinguishing *Yates*); *see also*, *Puma*, 2022 WL 823079, at *8 (distinguishing *Yates*). The statute at issue in *Yates* was 18 U.S.C. § 1519, which prohibits altering, destroying, and concealing records, documents, and tangible objects. *See Yates*, 574 U.S. at 532

---

[4] The only discussion of Section 1512 in the Senate Judiciary Committee Report, for example, relates to limitations under the pre-existing prohibition in Section 1512(b), which made it a crime to induce "another person to destroy documents, but not a crime for a person to destroy the same documents personally." S. Rep. No. 107-146, at 6–7.

(plurality opinion). *Yates* held that the term "tangible object" as used in Section 1519 included only an object "used to record or preserve information," and thus did not encompass the undersize red grouper that the defendant in *Yates* had discarded. *Id.* In reaching that conclusion, the plurality compared Section 1519 with Section 1512(c)(1), which similarly prohibits altering, destroying, or concealing evidence in connection with an official proceeding. Congress enacted both Sections 1519 and 1512(c) as part of the Sarbanes-Oxley Act of 2002, 116 Stat. 745, but drafted Section 1512(c)(1) to reach more broadly than Section 1519. *See Yates*, 574 at 543–45; *see also id.* at 545 n.7 ("Congress designed § 1519 to be interpreted apart from § 1512, not in lockstep with it."); *Caldwell*, 2021 WL 6062718 at *15–*18 (rejecting defendants' arguments that *Yates* narrows the reach of Section 1512(c) based, in part, on the statute's legislative history, title, and placement within Chapter 73 of Title 18)).

The statute with which the defendants are charged, Section 1512(c)(2), expands the obstruction prohibition beyond the focus on document destruction in Sections 1519 and Section 1512(c)(1). *See United States v. Ring*, 628 F. Supp. 2d 195, 225 (D.D.C. 2009) ("[Section] 1512(c)(2)'s application is not limited to the destruction of documents."). Its application to a defendant who "corruptly . . . otherwise obstructs, influences, or impedes any official proceeding," § 1512(c)(2), "operates as a catch-all to cover otherwise obstructive behavior that might not constitute a more specific offense like document destruction, which is listed in (c)(1)." *United States v. Petruk*, 781 F.3d 438, 447 (8th Cir. 2015) (affirming conviction under Section 1512(c)(2) for false statements) (quoting *United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014)). Courts have repeatedly upheld its application to obstructive acts that reach beyond the impairment of financial records. *See id.* (collecting cases concerning violations of Section § 1512(c)(2) by virtue of the use of false statements); *United States v. Phillips*, 583 F.3d 1261, 1265 (10th Cir.

2009) (upholding conviction under Section 1512(c)(2) for disclosing the identity of an undercover federal agent to thwart a grand jury investigation); *United States v. Carson*, 560 F.3d 566, 584 (6th Cir. 2009) (upholding conviction under Section 1512(c)(2) for providing false testimony to a grand jury); *United States v. Cervantes*, No. 16-10508, 2021 WL 2666684, at *6 (9th Cir. June 29, 2021) (upholding conviction under Section 1512(c)(2) for the burning of building to conceal two bodies of murder victims).

Moreover, to the extent that defendants suggest that the outcome in *Yates* was dictated by the general purpose of the Sarbanes-Oxley Act, ECF No. 253 (Cappuccio Mot.), at 12, that is incorrect: the plurality used a range of tools of construction to narrow the statute at issue, of which legislative history was only one, and Justice Alito, the decisive fifth vote, did not refer to Sarbanes-Oxley's purpose at all.[5] As Judges Mehta and Moss have recently explained, the contextual features, including legislative history, that influenced the *Yates* plurality to narrow Section 1519, are absent in Section 1512(c)(2). *See Caldwell,* 2021 WL 6062718, at *15–*18; *Montgomery,* 2021 WL 6134591, at *13–*18.

Furthermore, while Section 1512(c) may have been enacted due to concerns over document destruction and corporate malfeasance, "[s]tatutes often reach beyond the principal evil that animated them." *Sandlin,* 2021 WL 5865006, at *9 (finding that Section 1512(c)(2) may apply to defendants who attempted to stop the certification of the Electoral College on January 6, 2021); *see also Mostofsky*, 2021 WL 6049891 at *11 (rejecting defendant's argument that Section 1512

---

[5] Under the rule announced in *Marks v. United States*, 430 U.S. 188 (1977), Justice Alito's narrower concurrence represents the binding holding as the narrowest opinion among those concurring in the judgment. *See id.* at 193. In *Yates,* Judge Alito relied on "the statute's list of nouns, its list of verbs, and its title," but did not discuss the purpose of the Sarbanes-Oxley Act. *See* 574 U.S. at 549. Defendants thus errs by suggesting that the plurality's reasoning in *Yates*, such as its reference to the purpose of the Sarbanes-Oxley Act, is binding. *See* ECF No. 54, at 18 (citing plurality opinion).

only applies to conduct similar to document destruction and explaining that the defendant's position "would have the Court ignore the plain meaning of the words contained in (c)(2)—to wit, 'obstructs, influences, or impedes'—which cannot be read so narrowly. The use of 'otherwise' is better understood as 'clarif[ying] that the latter prohibits obstruction by means *other than* document destruction.'") (emphasis in original); *Caldwell*, 2021 WL 6062718 at * 14 ("The natural reading of the two sections is that section 1512(c)(2) 'operates as a catch-all to cover otherwise obstructive behavior that might not constitute a more specific offense like document destruction'").

**B.    The word "corruptly" in 18 U.S.C. § 1512(c)(2) is not unconstitutionally vague and the defendant had fair notice that his actions are punishable under 18 U.S.C. § 1512(c)(2)**

The defendants argue (ECF No. 253 (Cappuccio Mot.), at 19-22; ECF No. 255 (Judd Mot.), at 14-21) that Section 1512(c) is unconstitutionally vague because of the term "corruptly." Again, several other judges in this district have recently rejected this same argument. *Sandlin,* 2021 WL 5865006, *Caldwell*, 2021 WL 6062718, *Mostofsky*, 2021 WL 6049891; *Montgomery,* 2021 WL 6134591; *Nordean,* 2021 WL 6134595; *McHugh,* 2022 WL 296304, at *10 -*12; *Andries*, 2022 WL 768684, at *8; *Bingert*, 21-cr-91 (RCL), ECF No. 67, at 9-13. The void for vagueness doctrine, is narrow, and does not apply here, where the statute gives defendants fair notice and is not "so standardless that it invites arbitrary enforcement." *Johnson*, 576 U.S. at 595.

Section 1512(c)(2) applies only where an individual "corruptly" performs one of the enumerated acts. Defendants argue that the term "corruptly" is unconstitutionally vague. ECF No. 253 (Cappuccio Mot.) at 19-22; ECF No. 255 (Judd Mot.) at 14-21. As judges on this Court have recognized, that argument is without merit. *See Caldwell,* 2021 WL 6062718, at *8–*13; *Sandlin*, 2021 WL 5865006 at *10–14; *Mostofsky*, 2021 WL 604891 at *11; *Montgomery,* 2021 WL

6134591 at *18–*22; *Nordean,* 2021 WL 9134595, at *9.[6]

The defendants rely on *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991), which addressed a separate statute, 18 U.S.C. § 1505, that prohibited "corruptly" obstructing a congressional inquiry. *Poindexter* is inapposite, and does not show that Section 1512(c)(2) is vague as applied here, as Judge Mehta explained in depth in *Caldwell.*[7] *See Caldwell,* 2021 WL 60626718, at *8–*11. First, the D.C. Circuit narrowly confined *Poindexter*'s analysis to Section 1505's use of "corruptly," and expressly declined to hold "that term unconstitutionally vague as applied to all conduct." 951 F.2d at 385. Five years later, in *United States v. Morrison*, 98 F.3d 619 (D.C. Cir. 1996), the D.C. Circuit rejected a *Poindexter*-based vagueness challenge to 18 U.S.C. § 1512(b) and affirmed the conviction of a defendant for "corruptly" influencing the testimony of a potential witness at trial. *Id.* at 629–30. Moreover, "[i]n the 30 years it has been on the books, courts have not applied *Poindexter* widely to render impotent the many obstruction statues that use the word 'corruptly.' Rather . . . courts have recognized 'the narrow reasoning used in *Poindexter*' and 'cabined that vagueness holding to its unusual circumstances.'" *Nordean,* 2021 WL 6134595, at *10 (quoting *United States v. Edwards*, 869 F.3d 490, 502 (7th Cir. 2017)); *see also, e.g.*, *United States v. Kelly*, 147 F.3d 172, 176 (2d Cir. 1998) (rejecting vagueness challenge to "corruptly" in 26 U.S.C. § 7212(a)); *United States v. Shotts*, 145 F.3d 1289, 1300 (11th Cir. 1998) (same for 18 U.S.C. § 1512(b)); *United States v. Brenson*, 104 F.3d 1267, 1280 (11th Cir. 1997) (same for 18 U.S.C. § 1503). They have not "read *Poindexter* to mean, as Defendants seem

---

[6] While each of the cited opinions provides persuasive analysis, *Montgomery* is notable because the indictment at issue, like the one here, was not a speaking indictment. *Montgomery,* 2021 WL 6134591, at *18–*22.

[7] *Poindexter* was also superseded in significant part by the False Statements Accountability Act of 1996, Pub. L. No. 104-292, 110 Stat. 3459. As codified at 18 U.S.C. § 1515(b), the Act provides that the term "corruptly" in § 1505 "means acting with an improper purpose, *personally or by influencing another*, including making a false or misleading statement." (Emphasis added.)

to urge, that the term 'corruptly' in any obstruction statute is fatally vague." *Caldwell*, 2021 WL 6062718, at *9.

*Poindexter* also predated the Supreme Court's decision in *Arthur Andersen v. United States*, 544 U.S. 696 (2005). There, the Court explained the terms "'[c]orrupt' and 'corruptly' are normally associated with wrongful, immoral, depraved, or evil." *Id*. at 705 (citation omitted). In doing so, the Court "did not imply that the term was too vague." *Edwards*, 869 F.3d at 502.

Courts have encountered little difficulty when addressing Section 1512(c)'s elements following *Arthur Andersen*. *See United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011); *United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013) (same); *United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013) (upholding jury instruction defining "corruptly" as acting with "consciousness of wrongdoing"); *United States v. Matthews*, 505 F.3d 698, 706 (7th Cir. 2007) (upholding instruction defining "corruptly" as acting "with the purpose of wrongfully impeding the due administration of justice"); Seventh Circuit Pattern Criminal Jury Instruction for § 1512 ("A person acts 'corruptly' if he or she acts with the purpose of wrongfully impeding the due administration of justice."); *see also Mostofsky, supra,* at 23 ("corruptly" requires that a defendant act "'unlawfully, and with the intent to obstruct[,]' impede, or influence an official proceeding") (citing *Sandlin, supra,* at 26); *Caldwell, supra,* at 23 (noting that, "at the very least," corruptly "requires Defendants to have acted with consciousness of wrongdoing"). The reach of the term "corruptly" in Section 1512(c)(2) is also limited by the "nexus" requirement, namely, that the "the obstructive conduct be connected to a specific official proceeding." *United States v. Young*, 916 F.3d 368, 386 (4th Cir.), *cert. denied*, 140 S. Ct. 113 (2019) (citation omitted). Such efforts demonstrate that the statute's "corruptly" element does not invite arbitrary or wholly subjective application by either courts or juries.

24

**C.    The defendants' conduct falls squarely within the scope statute, despite the ruling in *United States v. Garrett Miller*.**

Defendants argue that 18 U.S.C. 1512(c)(2) proscribes discrete conduct, and their conduct falls outside the scope of the statute—an argument based primarily on Judge Nichols's holding in *United States v. Miller,* 21-cr-119 (CJN), 2022 WL 823070 (D.D.C. March 7, 2022). ECF No. 253 (Cappuccio Mot.), at 4-7; ECF No. 255 (Judd Mot.), at 3-7; ECF No. 259 (McCaughey Mot.), at 11. This argument, too, must fail.

Focusing on the word "otherwise" in Section 1512(c)(2), Judge Nichols identified "three possible readings" of Section 1512(c)(2)'s scope. 2022 WL 823070, at *6. First, Section 1512(c)(2) could serve as a "clean break" from Section 1512(c)(1), *id.* at 11-12, a reading that "certain courts of appeals have adopted," *id.* at 14. Judge Nichols, however, identified multiple "problems" with that interpretation, all focused on the interpretation of the term "otherwise." Judge Nichols reasoned that reading "otherwise" in Section 1512(c)(2) to mean "in a different way or manner" is "inconsistent" with the Supreme Court's decision in *Begay v. United States*, 553 U.S. 137 (2008), which considered whether driving under the influence qualified as a "violent felony" under the now-defunct residual clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1). 2022 WL 823070, at *7. Judge Nichols accordingly rejected the first interpretation. *Id.* at *7.    Second, in Judge Nichols's view, Section 1512(c)(1) could "provide[] examples of conduct that violates" Section 1512(c)(2).    *Id.* at *8.    Third, Section 1512(c)(2) could be interpreted as a "residual clause" for Section 1512(c)(1), such that both provisions are linked by the document-destruction and evidence-tampering "conduct pr[o]scribed by" Section 1512(c)(1).    *Id.* at *9. After considering Section 1512(c)'s structure, "historical development," and legislative history, Judge Nichols found "serious ambiguity" as to which of the two "plausible" readings—the second and third readings identified above—Congress intended.    Applying what Judge Nichols described

as principles of "restraint," he then interpreted Section 1512(c)(2) to mean that a defendant violates the statute only when he or she "take[s] some action with respect to a document, record, or other object in order to corruptly obstruct, impede, or influence an official proceeding" (the third reading). *Id.* at 28. Because, in Judge Nichols's view, the indictment did not encompass an allegation that Miller took any such action, Judge Nichols dismissed Count Three. *Id.* at 29.

Both before and after the ruling in the *Miller* case, judges on this Court have rejected a document-focused interpretation of Section 1512(c)(2). In *United States v. Sandlin*, No. 21-cr-88, 2021 WL 5865006 (D.D.C. Dec. 10, 2021), Judge Friedrich found that Section 1512(c)(2)'s terms are "expansive and seemingly encompass all sorts of actions that affect or interfere with official proceedings" and determined that the use of the word "otherwise" in Section 1512(c)(2) "clarifies" that it "prohibits obstruction by means *other than* document destruction*." Id*. at \*5-\*6. She did not view the Supreme Court's decision in *Begay* as altering that conclusion, because *Begay* rested on the ACCA's different statutory language and history. *Id.* at \*6. Judge Friedrich also rejected the defendant's reliance on *Yates v. United States*, 574 U.S. 528 (2015) (plurality opinion). *Sandlin*, 2021 WL 5865006, at \*6-\*8. Finally, Judge Friedrich concluded that, although a plain-text construction of Section 1512(c)(2) creates "substantial overlap" with other provisions in Section 1512 and Chapter 73, it does not create "intolerable overlap." *Id.* at \*7-\*8 (citing *United States v. Aguilar*, 515 U.S. 593, 616 (1995) (Scalia, J., concurring in part and dissenting in part)) (emphasis omitted).

Decisions from other judges on this Court before *Miller* followed suit. For example, in *United States v. Caldwell*, No. 21-cr-28, 2021 WL 6062718 (D.D.C. Dec. 20, 2021), Judge Mehta concluded that Section 1512(c)(2) is not "limited" to conduct "affecting the integrity or availability of evidence in a proceeding." *Id.* at \*11 (brackets and internal quotation marks omitted); *see id.*

at *11-*19 (addressing Section 1512(c)(2)'s text and structure, *Begay*, and *Yates*).   In *United States v. Mostofsky*, No. 21-cr-138, 2021 WL 6049891 (Dec. 21, 2021), Judge Boasberg found persuasive the analysis in *Sandlin* and *Caldwell*.   *See id.* at *11.   In *United States v. Nordean*, 21-cr-175, 2021 WL 6134595 (D.D.C. Dec. 28, 2021), Judge Kelly reasoned that an interpretation of Section 1512(c)(2) limiting it to "impairment of evidence" could not "be squared with" Section 1512(c)(2)'s "statutory text or structure."   *Id.* at *6; *see id.* at *6-*9 (addressing *Yates* and superfluity concerns).   And in *United States v. Montgomery*, 21-cr-46, 2021 WL 6134591 (D.D.C. Dec. 28, 2021), Judge Moss reached the same conclusion following an extended discussion of Section 1512(c)'s text, structure, and legislative history, as well as the *Begay* and *Yates* decisions. *Id.* at *10-*18; *see also United States v. Bozell*, 21-cr-216, 2022 WL 474144, at *5 (D.D.C. Feb. 16, 2022) (Bates, J.) (reaching the same conclusion on the scope of Section 1512(c)(2)); *United States v. Grider*, 21-cr-22, 2022 WL 392307, at *5-*6 (D.D.C. Feb. 9, 2022) (Kollar-Kotelly, J.) (same).

Following Judge Nichols's decision in *Miller*, five judges on this Court have disagreed with the *Miller* analysis. In denying a defendant's post-trial motion for acquittal under Rule 29 of the Federal Rules of Criminal Procedure, Judge Friedrich indicated that she was "not inclined to reconsider" her ruling in *Sandlin* and described her points of disagreement with *Miller*; the Court subsequently wrote on the matter, holding that it did not find *Miller* persuasive. *United States v. Reffitt*, 21-CR-32 (DLF), 2022 WL 1404247, at *5 (D.D.C. May 4, 2022). In *United States v. Puma*, 21-cr-454, 2022 WL 823079 (D.D.C. Mar 19, 2022), Judge Friedman concluded that the word "otherwise" in Section 1512(c)(2) "clarifies" that a defendant violates that section "through 'obstruction by means *other than* document destruction.'"   *Id.* at *12 (quoting *Mostofsky*, 2022 WL 6049891, at *11).   In reaching that conclusion, Judge Friedman rejected *Miller*'s "premise

that any 'genuine ambiguity persist[s],'" *id.* at *12 n.4 (quoting Mem. Op. at 7), and therefore found the rule of lenity "inapplicable." *Id.* In *United States v. McHugh,* 21-cr-453 (JDB), 2022 WL 1302880, (D.D.C. May 2, 2022), Judge Bates was not persuaded by Judge Nichols' narrow reading of § 1512(c), holding that "[n]othing about § 1512(c)(2)'s context or purpose justifies departing from the provision's ordinary meaning; on the contrary, the context, structure, and legislative history of § 1512 bolster the Court's conclusion that § 1512(c)(2) is a broad prohibition on all forms of corrupt obstruction." *Id.* at *8. Most recently, in *United States v. Bingert*, 21-cr-91 (RCL), ECF No. 67 (D.D.C. May 25, 2022), Judge Lamberth held that the narrow interpretation of the statute in *Miller* "strains the statute beyond its ordinary meaning," and that the Supreme Court decision in *Begay* does not compel the defendant's requested reading of the word "otherwise."   *Id.* at 14.

Finally, and notably, this Court held in *United States v. Hale-Cusanelli*, 21-cr-37 (TNM) (D.D.C. May 6, 2022), that the plain reading of the statute "to say that (c)(1) is about interfering with the evidence used in an official proceeding, and (c)(2) is about interfering with the proceeding itself" is proper, and "avoids many of the superfluidity concerns raised by the defendant and by Judge Nichols in his opinion in *United States vs. Miller*." Exhibit 1, Tr. 5: 8-14. This Court also held that the rule of lenity need not apply when considering 18 U.S.C. § 1512(c)(2), because "there is not such grievous ambiguity here" as to make the use of the rule of lenity appropriate. Exhibit 1, Tr. 8:3-8. Application of the rule of lenity here "would lead to the absurd result that destroying a document used or considered by Congress in the Electoral College vote count would qualify as obstruction of the proceeding, but interfering with the proceeding itself would not constitute obstruction." Exhibit 1, Tr. 8:16-22.

The government agrees with these Courts and believes the ruling in *Miller* is flawed for

two reasons. First, Judge Nichols erred by applying the rule of lenity to Section 1512(c)(2) because, as many other judges have concluded after examining the statute's text, structure, and history, there is no genuine—let alone "grievous" or "serious"—ambiguity. Second, even if Judge Nichols's narrow interpretation of Section 1512(c)(2)'s scope were correct, he erred by dismissing the Section 1512(c)(2) count in full because the indictment's allegations, by charging defendant using the statutory text, validly encompassed that narrower theory, particularly in light of proffered evidence that the government would adduce at trial. *See, e.g.*, *United States Firtash*, 392 F.Supp.3d 872, 887 (N.D. Ill. 2019) (upholding money laundering charge in indictment based in part on government's proffer of evidence regarding the nature of the financial transaction).

### 1.    The Court's ruling erroneously applied the rule of lenity.

"When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." *Bell v. United States*, 349 U.S. 81, 83 (1955). That principle underlies the "venerable" rule of lenity, *Miller*, 2022 WL 823070, at *5, (quoting *United States v. Nasir*, 17 F.4th 459, 472 (3d Cir. 2021) (en banc) (Bibas, J., concurring)), which ensures that "legislatures and not courts" define criminal activity given the "seriousness of criminal penalties" and the fact that "criminal punishment usually represents the moral condemnation of the community." *United States v. Bass*, 404 U.S. 336, 348 (1971); *see Liparota v. United States*, 471 U.S. 419, 427 (1985) ("Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability.").

The rule of lenity, however, does not come into play when a law merely contains some degree of ambiguity or is difficult to decipher. The rule of lenity "only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended." *Barber v. Thomas*,

560 U.S. 474, 488 (2010) (citation and internal quotation marks omitted); *Muscarello v. United States*, 524 U.S. 125, 138-39 (1998); *Young v. United States*, 943 F.3d 460, 464 (D.C. Cir. 2019). In short, some ambiguity is insufficient to trigger the rule of lenity; instead, a court must find "grievous ambiguity" that would otherwise compel guesswork. *See Ocasio v. United States*, 578 U.S. 282, 295 n.8 (2016) (internal quotation marks omitted). "Properly applied, the rule of lenity therefore rarely if ever plays a role because, as in other contexts, 'hard interpretive conundrums, even relating to complex rules, can often be solved.'" *Wooden v. United States*, 142 S. Ct. 1063, 1074 (2022) (Kavanaugh, J., concurring) (quoting *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019)).

Judge Nichols erroneously applied the rule of lenity in *Miller*. He referred to the "'grievous' ambiguity" standard when initially discussing the rule, *see Miller*, 2022 WL 823070, at *5, and found "a serious ambiguity" regarding the conduct that Section 1512(c)(2) reaches, *id.* at *10; *see also id.* at *12 ("[T]he Court does not believe that there is a single obvious interpretation of the statute."). But Judge Nichols's interpretation of Section 1512(c)(2)'s scope places undue emphasis on a single word ("otherwise") and a single Supreme Court decision (*Begay*) that interpreted that word as used in an entirely different statute and statutory context. A proper reading of Section 1512(c)(2)'s text, structure, and history demonstrates that Section 1512(c)(2) prohibits any corrupt conduct that intentionally obstructs or impedes an official proceeding, not merely where a "defendant ha[s] taken some action with respect to a document, record, or other object," *id.* at 28, to corruptly obstruct an official proceeding.

Simply put, the rule of lenity is "inapplicable" here. *Puma*, WL 823079, at *12 n.4. Congress made clear in Section 1512(c)(2) that it sought to protect the integrity of official proceedings—regardless of whether a defendant threatens such a proceeding by trying to interfere with the evidence before that tribunal or threatens the tribunal itself. Any such distinction

between these forms of obstruction produces the absurd result that a defendant who attempts to destroy a document being used or considered by a tribunal violates Section 1512(c) but a defendant who threatens to use force against the officers conducting that proceeding escapes criminal liability under the statute. *See* Exhibit 1, Tr. 8:16-22. Not only does the rule of lenity not require such an outcome, but such an application loses sight of a core value that animates the lenity rule: that defendants should be put on notice that their conduct is criminal and not be surprised when prosecuted. *See Wooden*, 142 S. Ct. at 1082 (Gorsuch, J., concurring) ("Lenity works to enforce the fair notice requirement by ensuring that an individual's liberty always prevails over ambiguous laws."). It would strain credulity for any defendant who was focused on stopping an official proceeding from taking place to profess surprise that his conduct could fall within a statute that makes it a crime to "obstruct[], influence[], or impede[] [any] official proceeding or attempt[] to do so." 18 U.S.C. § 1512(c)(2). Confirming the absence of ambiguity—serious, grievous, or otherwise—is that despite Section 1512(c)(2)'s nearly 20-year existence, no other judge has found ambiguity in Section 1512(c)(2), including nine judges on this Court considering the same law and materially identical facts. *See supra* at 26-28.

>    a.   **Section 1512(c)(2)'s text and structure make clear that it covers obstructive conduct "other" than the document destruction covered in Section 1512(c)(1).**

While Section 1512(c)(1) prohibits the corrupt destruction or alteration of documents, records, and other objects in connection with an official proceeding, Section 1512(c)(2) prohibits corrupt conduct that "otherwise" obstructs, influences, or impedes an official proceeding. Before Judge Nichols's decision to the contrary, every reported case to have considered the scope of Section 1512(c)(2), *see* Gov't Supp. Br., *United States v. Miller*, No. 21-cr-119, ECF 74 (*Miller*

Supp. Br.), at 7-9,8 and every judge on this Court to have considered the issue in cases arising out of the events at the Capitol on January 6, 2021, *see supra* at 26-28, concluded that Section 1512(c)(2) "prohibits obstruction by means *other than* document destruction."   *Sandlin*, 2021 WL 5865006, at *5.  That conclusion follows inescapably from the text of Section 1512(c)'s two subsections read together: Section 1512(c)(1) "describes how a defendant can violate the statute by 'alter[ing], destroy[ing], mutilat[ing], or conceal[ing]' documents for use in an official proceeding," *Puma*, 2022 WL 823079, at *12, while "otherwise" in Section 1512(c)(2) "signals a shift in emphasis . . . from actions directed at evidence to actions directed at the official proceeding itself," *Montgomery*, 2021 WL 6134591, at *12 (internal quotation marks omitted).

Judge Nichols was thus mistaken in concluding that this interpretation either "ignores" that "otherwise" is defined with reference to "something else," namely Section 1512(c)(1), or fails to "give meaning" to the term "otherwise."   *Miller*, 2022 WL 823070, at *6.   Far from suggesting that Section 1512(c)(2) is "wholly untethered to" Section 1512(c)(1), *id.*, "otherwise" as used in Section 1512(c)(2) indicates that Section 1512(c)(2) targets obstructive conduct in a manner "other" than the evidence tampering or document destruction that is covered in Section 1512(c)(1).

---

8 *See, e.g.*, *United States v. Martinez*, 862 F.3d 223, 238 (2d Cir. 2017) (police officer tipped off suspects about issuance of arrest warrants before "outstanding warrants could be executed, thereby potentially interfering with an ongoing grand jury proceeding"), *vacated on other grounds*, 139 S. Ct. 2772 (2019); *United States v. Petruk*, 781 F.3d 438, 446-47 (8th Cir. 2015) (defendant attempted to secure a false alibi witness while in jail for having stolen a vehicle); *United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014) (defendant solicited information about a grand jury investigation from corrupt "local police officers'); *United States v. Ahrensfield*, 698 F.3d 1310, 1324-26 (10th Cir. 2012) (law enforcement officer disclosed existence of undercover investigation to target); *United States v. Phillips*, 583 F.3d 1261, 1265 (10th Cir. 2009) (defendant disclosed identity of an undercover officer, thus preventing him from making controlled purchases from methamphetamine dealers); *United States v. Carson*, 560 F.3d 566, 584 (6th Cir. 2009) (false testimony before a grand jury); *United States v. Reich*, 479 F.3d 179, 185-87 (2d Cir. 2007) (Sotomayor, J.) (defendant an opposing part a forged court order that purported to recall and vacate a legitimate order, causing the opposing party to withdraw an application for a writ of mandamus).

*See Miller* Supp. Br. at 8.   That understanding of "otherwise" is both fully consistent with each definition Judge Nichols surveys, *see* 2022 WL 823070, at *7 (noting that "otherwise" in Section 1512(c)(2) may plausibly be read as "in a different way or manner; differently"; "in different circumstances: under other conditions"; or "in other respects") (internal quotation marks omitted), and ensures that the term is not rendered "pure surplusage," *id.* at *7.   In sum, "otherwise" makes clear that Section 1512(c)(1)'s scope encompasses document destruction or evidence tampering that corruptly obstructs an official proceeding, while Section 1512(c)(2)'s ambit includes "other" conduct that corruptly obstructs an official proceeding.

The fact that some cases "could be brought under either or both prongs of Section 1512(c)," *Montgomery*, 2021 WL 6134591, at *12, does not imply that Section 1512(c)(2) "would have the same scope and effect . . . if Congress had instead omitted the word 'otherwise,'" 2022 WL 823070, at *7. For one thing—and as noted in the government's supplemental brief in *Miller, see Miller* Supp. Br. at 11-13—overlap is "not uncommon in criminal statutes," *Loughrin v. United States*, 573 U.S. 351, 358 n.4 (2014), and Section 1512(c)(2)'s broader language effectuates its design as a backstop in the same way that a "generally phrased residual clause . . . serves as a catchall for matters not specifically contemplated."   *Republic of Iraq v. Beaty*, 556 U.S. 848, 860 (2009). Moreover, interpreting the interplay of Sections 1512(c)(1) and 1512(c)(2) in this way does not foreclose a defendant from arguing that his conduct falls outside Section 1512(c)(2)'s scope because his document destruction or evidence concealment is prohibited and punishable only under Section 1512(c)(1).   To be sure, practical considerations may militate against seeking such a potentially Pyrrhic victory—where success leads to reindictment under Section 1512(c)(1)—but those practical considerations provide no reason to reject the straightforward interpretation of Section 1512(c) as divided between a provision that targets evidence destruction (Section

1512(c)(1)) and a provision that applies to "otherwise" obstructive conduct (Section 1512(c)(2)). And, in any event, the "mere fact that two federal criminal statutes criminalize similar conduct says little about the scope of either." *Pasquantino v. United States*, 544 U.S. 349, 358 n.4 (2005).

Judge Nichols further concluded that interpreting "otherwise" in the manner described above is "inconsistent" with *Begay*, where, in the Court's view, analysis of what "'otherwise' meant" was "[c]rucial" to the Supreme Court's analysis. 2022 WL 823070, at *7. That conclusion is flawed in several respects. First, in considering whether driving under the influence was a "violent felony" for purposes of the ACCA's residual clause, which defines a "violent felony" as a felony that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury," 18 U.S.C. § 924(e)(2)(B)(ii), the Supreme Court in *Begay* addressed a statutory provision that has an entirely different structure than Section 1512(c)(2). *See Sandlin*, 2021 WL 5865006, at *6 (distinguishing *Begay* on the ground that, unlike the ACCA residual clause, the "otherwise" in Section 1512(c)(2) is "set off by both a semicolon and a line break"); *Montgomery*, 2021 WL 6134591, at *11 ("*Begay*'s discussion of the word 'otherwise' is remarkably agnostic. The Supreme Court merely observed that 'the word 'otherwise' can (we do not say must) refer to a crime that is similar to the listed examples in some respects but different in others.'"); *Puma*, 2022 WL 823079, at *12, n. 4 (disagreeing with Judge Nichols' application of *Begay* to Section 1512, and agreeing with Judge Moss who has previously rejected this same argument); *see also, United States v. Ring*, 628 F.Supp.2d 195, 224 n.17 (D.D.C. 2009). Unlike in the ACCA residual clause, the "otherwise" phrase in Section 1512(c)(2) "stands alone, unaccompanied by any limiting examples."9   *Ring*,

---

9 The Court suggested (2022 WL 823070, at *8) that "[t]he government also presents an alternative reading" that Section 1512(c)(1) "provides examples of conduct that violates" Section 1512(c)(2).   *Id.* at *8.   That is incorrect.   Neither the government nor Miller nor (to the

628 F.Supp.2d at 224 n.17.   In other words, the "key feature" in Section 924(e)(2)(B)(ii) at issue in *Begay*, "namely, the four example crimes," 553 U.S. at 147, is "absent" in Section 1512(c)(2). *Caldwell*, 2021 WL 6062718, at *14. Although Judge Nichols recognized the structural difference between the ACCA residual clause and Section 1512(c)(2), 2022 WL 823070, at *9, he offered no reason to import *Begay*'s interpretation of "otherwise" to Section 1512(c)(2)'s differently structured provision.

Second, describing the Supreme Court's interpretation of "what 'otherwise' meant" as "[c]rucial" to that Court's decision in *Begay* is an inaccurate description of *Begay*'s analysis.   The majority in *Begay* noted first that the "listed examples" in Section 924(e)(2)(B)(ii)—burglary, arson, extortion, or crimes involving explosives—indicated that the ACCA residual clause covered only similar crimes.   *Begay*, 553 U.S. at 142.   Those examples, the majority reasoned, demonstrated that Section 924(e)(2)(B)(ii) was not designed "to be all encompassing," but instead to cover only "crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves."   *Id.* at 142-43.   The majority next drew support for its conclusion from Section 924(e)(2)(B)(ii)'s history, which showed that Congress both opted for the specific examples in lieu of a "broad proposal" that would have covered offenses involving the substantial use of physical force and described Section 924(e)(2)(B)(ii) as intending to encompass crimes "similar" to the examples.   *Id.* at 143-44.   In the final paragraph of that section of the opinion, the majority addressed "otherwise," noting that the majority "[could ]not agree" with the government's argument that "otherwise" is "*sufficient* to demonstrate that the examples do not

---

government's knowledge) any court has proposed or adopted that construction of Section 1512(c)(2).   Considering an interpretation that no party advocates and no court has adopted injects the kind of "front-end ambiguity" that "lead[s] to significant inconsistency, unpredictability, and unfairness in application."   *Wooden*, 142 S. Ct. at 1076 (Kavanaugh, J., concurring).

limit the scope of the clause" because "the word 'otherwise' *can* (we do not say *must*, cf. *post* at [150-52] (Scalia, J. concurring in judgment)) refer to a crime that is similar to the listed examples in some respects but different in others."   *Id.* at 144.

A tertiary rationale responding to a party's argument where the majority refrains from adopting a definitive view of "otherwise" cannot be described as "crucial."   The majority's "remarkably agnostic" discussion of "otherwise" in *Begay* explicitly noted that the word may carry a different meaning where (as here) the statutory text and context suggests otherwise. *Montgomery*, 2021 WL 6134591, at *11; *see Caldwell*, 2021 WL 6062718, at *14 (declining to depart from the "natural reading" of "otherwise" as "'in a different way or manner'" based on the discussion in *Begay*).   In short, the majority in *Begay* "placed little or no weight on the word 'otherwise' in resolving the case."   *Montgomery*, 2021 WL 6134591, at *11.

Third, whatever the significance of the majority's interpretation of "otherwise" in *Begay*, *Begay*'s ultimate holding demonstrates why no court should embark on imposing an extra-textual requirement within Section 1512(c)(2).   The Supreme Court held in *Begay* that Section 924(e)(2)(B)(ii) encompasses only crimes that, similar to the listed examples, involve "purposeful, violent, and aggressive conduct."   553 U.S. at 144-45.   But "*Begay* did not succeed in bringing clarity to the meaning of the residual clause."   *Johnson v. United States*, 576 U.S. 591, 600 (2015). Just as the *Begay* majority "engraft[ed]" the "purposeful, violent, and aggressive conduct" requirement onto the ACCA's residual clause, 553 U.S. at 150 (Scalia, J., concurring in judgment) (internal quotation marks omitted), so too Judge Nichols engrafted onto Section 1512(c)(2) the requirement that a defendant "have taken some action with respect to a document, record, or other object" to obstruct an official proceeding, 2022 WL 823070, at *10.   In the nearly 20 years since Congress enacted Section 1512(c)(2), no reported cases have adopted Judge Nichols's

interpretation, and for good reason.   That interpretation would give rise to unnecessarily complex questions about what sort of conduct qualifies as "taking some action with respect to a document" in order to obstruct an official proceeding.   *Cf. United States v. Singleton*, No. 06-cr-80, 2006 WL 1984467, at *3 (S.D. Tex. July 14, 2006) (unpublished) (concluding that Section 1512(c)(2) "require[s] some nexus to tangible evidence, though not necessarily tangible evidence already in existence"); *see also United States v. Hutcherson*, No. 05-cr-39, 2006 WL 270019, at *2 (W.D. Va. Feb. 3, 2006) (unpublished) (concluding that a violation of Section 1512(c)(2) requires proof that "an individual corruptly obstructs an official proceedings [*sic*] through his conduct in relation to a tangible object").10   In brief, Judge Nichols's interpretation is likely to give rise to the very ambiguity it purports to avoid.

Judge Nichols's observation that only "certain courts of appeals," 2022 WL 823070, at *7, have interpreted Section 1512(c)(2) to reach conduct that obstructs an official proceeding other than document destruction significantly understates the case law.   Every reported case—both in the courts of appeals and in district courts—has interpreted Section 1512(c)(2) in that manner. *See Miller* Supp. Br.at 7-9 (discussing cases).   Moreover, the Court's effort to distinguish one of those cases, *United States v. Petruk*, 781 F.3d 438, 447 (8th Cir. 2015), misses the mark.   That *Petruk* did not cite or discuss *Begay*, 2022 WL 823070, at *7-*8, says nothing about the logic of

---

10 Judge Nichols's interpretation of Section 1512(c)(2) resembles the reading given in *Singleton* and *Hutcherson*, both of which are unpublished and neither of which the Miller ruling cites.   As noted in the main text, no other court, at least in a reported opinion, appears to have adopted the nexus-to-tangible-evidence-or-a-tangible-object standard articulated in *Singleton* and *Hutcherson*. *See United States v. De Bruhl-Daniels*, 491 F.Supp.3d 237, 250-51 (S.D. Tex. 2020) (identifying *Singleton* and *Hutcherson* as outliers from the "most popular—and increasingly prevalent— interpretation of § 1512(c)(2) [as] an unlimited prohibition on obstructive behavior that extends beyond merely tampering with tangible items"); *Ring*, 628 F.Supp.2d at 225 n.18 (disagreeing with *Singleton* and *Hutcherson* but finding that the alleged conduct at issue in that case involved "some nexus to documents").   No court of appeals has cited either case.

its analysis, particularly given how "remarkably agnostic" *Begay*'s discussion of "otherwise" is. *See Montgomery*, 2021 WL 6134591, at *11. The Court likewise faulted *Petruk* for misreading the Supreme Court's decision in *United States v. Aguilar*, 515 U.S. 593 (1995), where the Supreme Court interpreted the omnibus clause in 18 U.S.C. § 1503 to require a "relationship in time, causation, or logic," *id.* at 599, between the obstructive conduct and the proceeding—a grand jury investigation—at issue in the defendant's case. But the restraint the Supreme Court exercised by interpreting Section 1503 to require that "nexus" is paralleled by interpreting the same nexus requirement to apply to Section 1512(c)(2)—as other judges on this Court have done, *see Miller* Supp. Br. at 20-22 (explaining that the nexus requirement applies to Section 1512(c)(2)); *Montgomery*, 2021 WL 6134591, at *20-*21—and not by imposing an additional, atextual requirement that a defendant must "have taken some action with respect to a document" for his conduct to fall within the scope of Section 1512(c)(2).[11]

>   **b.     Other tools of statutory interpretation do not undermine that straightforward reading.**

Because Section 1512(c)(2)'s text and context make clear that it reaches conduct that obstructs, influences, or impedes an official proceeding in a manner other than document destruction or evidence tampering, resorting to other tools of statutory interpretation is not necessary. In any event, those tools reinforce that straightforward interpretation of Section 1512(c)(2)'s scope. *See Miller* Supp. Br. at 9-17. In reaching a contrary conclusion, Judge

---

[11] Judge Nichols's similar criticism of *United States v. Burge*, 711 F.3d 803 (7th Cir. 2013), 2022 WL 823070, at *8, n.7, fails for the same reason. And Judge Nichols's related criticism that *United States v. Volpendesto*, 746 F.3d 273 (7th Cir. 2014), which relied in part on *Burge*, "did not even involve a prosecution under § 1503, let alone § 1512(c)(2)," 2022 WL 823070, at *8, n.7, falls short. The defendants in *Volpendesto* were prosecuted for, among other things, conspiracy to obstruct an official proceeding, in violation of 18 U.S.C. § 1512(k), and the jury was instructed on the elements of 18 U.S.C. § 1512(c)(2). *See United States v. Volpendesto*, 08-cr-115, Dkt. No. 518, at 88-95 (N.D. Ill. Dec. 22, 2010).

Nichols erred in several respects.

First, Judge Nichols suggested that reading Section 1512(c)(2) consistently with its plain language and structure as described above would "introduce something of an internal inconsistency" because Section 1512(c)(2) would have greater breadth than neighboring provisions in Section 1512. 2022 WL 823070, at *12; *see id.* (describing Section 1512(c)(2) as an "elephant[] in [a] mousehole[]").   That reasoning is inconsistent with *Yates*, where a plurality of the Supreme Court recognized that Section 1512 consisted of "broad proscriptions," not "specialized provisions expressly aimed at corporate fraud and financial audits."   574 U.S. at 541 (plurality opinion).   Moreover, the narrowing construction Judge Nichols imposed on Section 1512(c)(2) fails to consider that Section 1512(c)(2) reaches more broadly precisely because other provisions within Section 1512 leave gaps that Section 1512(c)(2) fills.  *Cf. Catrino v. United States*, 176 F.2d 884, 887 (9th Cir. 1949) ("The obstruction of justice statute is an outgrowth of Congressional recognition of the variety of corrupt methods by which the proper administration of justice may be impeded or thwarted, a variety limited only by the imagination of the criminally inclined.").

Second, Judge Nichols worried that a reading of Section 1512(c)(2) that encompasses obstructive conduct unrelated to documents or records would give rise to "substantial superfluity problems."   2022 WL 823070, at *12.   But even a "broad interpretation of § 1512(c)(2) does not entirely subsume numerous provisions within the chapter," and any overlap with other provisions in Section 1512 is "hardly remarkable."   *Sandlin*, 2021 WL 5865006, at *8; *see also*, Exhibit 1, Tr. 5-12-23; *accord Nordean*, 2021 WL 6134595, at *8.   More troubling, by interpreting Section 1512(c)(2) to require "some action with respect to a document," 2022 WL 823070, at *15, Judge Nichols risks rendering Section 1512(c)(2) itself superfluous in light of the "broad ban on

evidence-spoliation" in Section 1512(c)(1), *Yates*, 574 U.S. at 541 n.4 (plurality opinion) (internal quotation marks omitted).   Moreover, because Section 1512(c)(1) includes both completed and *attempted* evidence tampering, *see* 18 U.S.C. § 1512(c)(1) (reaching "[w]hoever corruptly . . . alters, destroys, mutilates, or conceals a record, document, or other object, *or attempts to do so*) (emphasis added), it is unlikely that a defendant who "take[s] some action with respect to a document, record, or other object," 2022 WL 823070, at *15, has not also taken a "substantial step" toward altering, destroying, mutilating, or concealing that document sufficient to fall within the scope of Section 1512(c)(1).   *See United States v. Hite*, 769 F.3d 1154, 1162 (D.C. Cir. 2014) (explaining that the "general meaning of 'attempt' in federal criminal law" is "an action constituting a 'substantial step' towards commission of a crime and performed with the requisite criminal intent").

The canon against superfluity, which is "strongest when an interpretation would render superfluous another part of the same statutory scheme," *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013), is even stronger when it renders superfluous "other provisions in the *same enactment*." *Freytag v. Comm'r*, 501 U.S. 868, 877 (1991) (emphasis added; internal quotation marks omitted); *cf. Yates*, 574 U.S. at 543 (plurality opinion) ("We resist a reading of § 1519 that would render superfluous an entire provision passed . . . as part of the same Act.").   That principle comes into play here because Sections 1512(c)(1) and 1512(c)(2) were enacted together as part of the Sarbanes-Oxley Act.   *See Miller* Supp. Br. at 15-16.

Third, Judge Nichols's discussion of statutory and legislative history, 2022 WL 823070, at *11- *14, provides no sound reason to deviate from the straightforward interpretation of Section 1512(c)(2) described above.   For example, Judge Nichols suggested that Congress would have had no reason to add Section 1512(a)(2)(B) three months after enacting Section 1512(c)(2) if the

40

latter provision were construed broadly. 2022 WL 823070, at *13. Section 1512(a)(2)(B) prohibits the use or threatened use of physical force against "any person" with the intent to "cause or induce any person" to take one of four actions, including "alter[ing], destroy[ing], mutilat[ing], or conceal[ing] an object with intent to impair the integrity or availability of the object for use in an official proceeding." 18 U.S.C. § 1512(a)(2)(B)(ii). But as Judge Nichols noted, 2022 WL 823070, at *12, n. 10, unlike Section 1512(a)(2)(B), Section 1512(c) aimed generally to impose "direct" liability for obstructive conduct that was not directed at intimidating or influencing another person, *see Miller* Supp. Br. at 16.12 Understood in that light, Section 1512(a)(2)(B) operates harmoniously with both subsections in Section 1512(c): Section 1512(a)(2)(B)(ii) reaches a defendant's use of force or threatened use of force at *another person* in order to cause that person to destroy documents in connection with an official proceeding; Section 1512(c)(1) reaches a defendant's direct destruction of documents in connection with an official proceeding; and Section 1512(c)(2) reaches a defendant's non-document-related conduct that obstructs or impedes an official proceeding. And while the legislators who enacted Section 1512(c) in the Sarbanes-Oxley Act undoubtedly had document shredding foremost in mind, *see* 2022 WL 823070, at *13- *14; *accord Miller* Supp. Br. at 15 (noting floor statements addressing concern about document shredding in the *Arthur Andersen* prosecution), "it is unlikely that Congress was concerned with only the type of document destruction at issue in the *Arthur Andersen* case." *Montgomery*, 2021

---

12  Judge Nichols suggested (2022 WL 823070, at *12, n.10) that Section 1512(c)(2) could be read as "creating 'direct' liability for the other types of conduct covered by § 1512—that is, that it makes criminal an individual doing directly those things for which the rest of § 1512 requires action directed at another person." Although the government's supplemental brief described Section 1512(c)(2) in those terms, *see Miller* Supp. Br. at 16 ("Section 1512(c) aimed at closing a 'loophole' in Section 1512: the existing prohibitions did not adequately criminalize a defendant's *personal* obstructive conduct *not* aimed at another person."), Judge Nichols decided (2022 WL 823070, at *12 n.10) "not [to] address" the interpretation "further" because "[n]either party presses this argument (or anything like it)."

WL 6134591, at *16.   In other words, "there is no reason to believe that Congress intended to fix that problem only with respect to 'the availability or integrity of evidence.'" *Id.*

Finally, an interpretation of Section 1512(c)(2) that imposes criminal liability only when an individual takes direct action "with respect to a document, record, or other object" to obstruct a qualifying proceeding leads to absurd results.   *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 69 (1994) (rejecting interpretation of a criminal statute that would "produce results that were not merely odd, but positively absurd").   That interpretation would appear, for example, not to encompass an individual who seeks to "obstruct[], influence[], or impede[]" a congressional proceeding by explicitly stating that he intends to stop the legislators from performing their constitutional and statutory duties to certify Electoral College vote results by "drag[ging] lawmakers out of the Capitol by their heels with their heads hitting every step," *United States v. Reffitt*, No. 21-cr-32, Trial Tr. 1502, carrying a gun onto Capitol grounds, *id.* at 1499, and then leading a "mob and encourag[ing] it to charge toward federal officers, pushing them aside to break into the Capitol," *id.* at 1501-02, unless he also picked up a "document or record" related to the proceeding during that violent assault.   The statutory text does not require such a counterintuitive result.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny defendant's motion to dismiss.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052


BY:_____/s/_____

KIMBERLY L. PASCHALL
Assistant United States Attorney
D.C. Bar No. 1015665
Email:Kimberly.Paschall@usdoj.gov

JOCELYN BOND
Assistant United States Attorney
D.C. Bar No. 1008904
Email: Jocelyn.Bond@usdoj.gov

43