UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PATRICK MCCAUGHEY,<br><br>　　Defendant. | Case No. 21-cr-40-01 (TNM) |

## GOVERNMENT'S RESPONSE TO THE COURT'S SENTENCING ORDER

　　The United States hereby responds to the Court's September 13, 2022, Order ("Order") directing the government to provide, in advance of defendant's sentencing, certain information regarding cases from other districts in which a defendant was charged with violating either 18 U.S.C. §§ 111 and 231. *See* ECF No. 474. In response to the Order, the government has undertaken a good faith effort to gather the information requested by the Court. As described below, the government has successfully identified hundreds of cases in which defendants were charged with violations of Section 111(a) and/or 231 during the two-year period identified in the Order, and we have identified the sentences that have been imposed in those cases that have, thus far, proceeded to sentencing. The results are presented in Attachment 1, as described below.

　　The Attachment does not contain information regarding the government's sentencing recommendations in each of those cases because that information is not readily available in the Department of Justice's centralized case-management system, as described below. Rather, gathering information regarding the government's sentencing recommendation in each case would require nationwide searches of case files, court dockets, and transcripts for hundreds of cases handled by dozens of United States Attorneys' Offices (USAOs) across the country that have no

role in the prosecution of the Capitol siege cases in this District. Given the limited probative value of this additional information and the significant burden of attempting to gather it, the government respectfully requests that the Court modify the Order to remove that particular item from the list of information to be produced.

**BACKGROUND**

On September 13, 2022, this Court entered the Order directing the government to provide specified information one week before the sentencing memoranda.[1] The Order directs the government to augment its sentencing table to include the following information:

> "18 U.S.C. § 111 and 18 U.S.C. § 231 cases brought by U.S. Attorneys' Offices in other jurisdictions—including but not limited to the District of Oregon—for all such cases initiated between January 6, 2020, and January 6, 2022. The chart shall include cases involving charges under these provisions, whether or not the cases led to convictions on those charges."

ECF No. 474.

The Order states that the information is needed "to avoid any [unwarranted] sentencing disparities." *See also* 18 U.S.S.G. § 3553(a)(6) (the sentencing court "shall consider . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"). The Order further explained that information about all cases involving 18 U.S.C. §§ 111 and 231 brought nationwide within the two-year time period was

---

[1] We apologize to the Court for the untimeliness of this submission. We have taken efforts to ensure the completion and accuracy of this submission.

necessary "[c]onsidering the relatively few sentences imposed thus far for violations of 18 U.S.C. §§ 111 and 18 U.S.C. § 231 in the Capitol breach cases."

## DISCUSSION

**I. The data collected by the government and submitted with this response**

In response to the Order, the government contacted the Department of Justice's Executive Office for United States Attorneys (EOUSA) in order to determine what information might be available regarding charges brought nationwide under the particular statutes identified by the Court. We worked with EOUSA to search CaseView, the centralized case-management system EOUSA maintains for the USAOs for all 94 federal judicial districts, and to generate spreadsheets that contain data regarding all USAO cases in which a defendant was charged with violations of 18 U.S.C. §§ 111 and 231 between January 6, 2020, and January 31, 2023. The results of those searches are set forth in the attached spreadsheet.

Attachment 1, referred to as the "Criminal Caseload Statistics," sets forth all cases in which charges were brought under Section 111 and 231 during the relevant period. The spreadsheet is organized by district and contains information regarding cases in which charges were brought and defendants were convicted under any of those statutes. This spreadsheet indicates the district, case name and docket number, the disposition of each charge (including charges other than 111, and 231), and the sentence imposed. As the Court can see, not all defendants who were charged with Section 111 and 231 were convicted of those particular charges, and the spreadsheet makes clear which charge resulted in a conviction and which resulted in a sentence of imprisonment.[2]

---

[2] Because of the way EOUSA collects data from the 94 U.S. Attorney's Offices, all sentences that are described as "Time served" are recorded as "0" months. The actual sentence imposed in those cases would not, in fact, have been zero.

3

**II. Collecting information regarding the government's sentencing recommendation in each of the cases nationwide would be unduly burdensome.**

The government has provided in Attachment One substantial information regarding charges brought under Sections 111 and 231 during the period identified by the Court, and the sentences imposed in those cases. The government has determined, however, that the Department of Justice does not collect and maintain centralized data regarding the government's sentencing recommendations. Information regarding the government's sentencing recommendations may be contained in a variety of sources, including sentencing memoranda, case files, transcripts of sentencing proceedings, court dockets, and/or presentence investigation reports or communications with probation offices. Moreover, some of those recommendations may be under seal. Gathering that particular data for the hundreds of cases identified in Attachment One would require a burdensome search of many such sources across the country and would needlessly "divert prosecutors' resources." *United States v. Armstrong*, 517 U.S. 456, 468 (1996). The government submits that the limited value of information regarding the government's sentencing recommendations in those cases -- as opposed to the sentences actually imposed by the courts -- is outweighed by the burden of such an undertaking. Accordingly, the government respectfully requests that the Court modify the Order to eliminate the requirement that the government gather and provide information regarding the sentencing recommendations in each case.

**III. The information required by the Order is not necessary to avoid unwarranted sentencing disparities**

The information provided pursuant to the Order will not assist the Court in "avoid[ing] unwarranted disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). That is true for several reasons.

First, and most fundamentally, the assaults and robberies perpetrated in connection with the siege of the Capitol are unique—as the D.C. Circuit has noted "the violent breach of the Capitol

4

on January 6 was a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). We are unaware of any other event of its kind in which scores of assaults of law enforcement officers created a "grave danger" to our democracy itself. Relatedly, Section 3553(a)(6) focuses on comparing defendants who engaged in "similar conduct," but the Capitol siege defendants are categorically unlike others who have violated Section 111 or 231. While assaulting or resisting federal officers or interfering with officers during a civil disorder is serious conduct that warrants prosecution, the January 6 attack on the Capitol is *sui generis*. As this Court has noted, Capitol siege defendants "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). Capitol siege defendants thus participated in "a singular and chilling event in U.S. history, raising legitimate concern about the security—not only of the Capitol building—but of our democracy itself." *United States v. Cua*, No. 21-cr-107, 2021 WL 918255, at *3 (D.D.C. Mar. 10, 2021). Section 3553(a)(6) does not require sentencing courts to "avoid sentencing disparities between defendants who might not be similarly situated," and where, as here, the offense is "uniquely serious," the sentencing court may properly opt to "impose stiffer sentences that justify the risk of potential disparities." *United States v. Mattea*, 895 F.3d 762, 768 (D.C. Cir. 2018) (citations omitted).

  Second, the proper application of the Sentencing Guidelines themselves serves as the bulwark against unwarranted sentencing disparities. The government has been careful to gather and provide to the courts its sentencing tables in petty-offense misdemeanor cases that are not governed by the Sentencing Guidelines. This effort is designed to provide a framework for the courts to evaluate the conduct and fashion appropriate sentences in those unique cases. But that

same exercise is not warranted in cases under Sections 111 and 231, to which the Sentencing Guidelines apply. While Section 3553(a) requires a sentencing court to avoid unwarranted disparities, as long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007). In short, "the Sentencing Guidelines are themselves an anti-disparity formula." *United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017); *accord United States v. Sanchez*, 989 F.3d 523, 540 (7th Cir. 2021).[3]

Third, Section 3553(a)(6) directs a sentencing court to identify defendants "with similar records," but the information called for by the Order does not facilitate that goal because it will not shed light on whether defendants charged with violations of Sections 111 or 231 in other districts have records similar to the defendant in this case. Indeed, even the criminal histories of Capitol siege defendants themselves vary considerably. Although many of those defendants had no criminal history before they were convicted of crimes they committed on January 6, others did. *See, e.g.*, *U.S. v. Edward Hemenway*, D.D.C. 21-cr-49 ECF 32 at 11 (sexual battery); *U.S. v. Mark Simon*, D.D.C. 21-cr-67, ECF No. at 9-10 (assault with a deadly weapon); *U.S. v. Troy Smocks*, D.D.C. 21-cr-198, ECF No. 59 at 6 (bank fraud, forgery, theft, multiple instances of falsely impersonating a federal agent); *U.S. v. Matthew Webler*, D.D.C. 21-cr-741, ECF No. 22 at 16-17 (two convictions for aggravated assault). The way to consider these differences is not through nationwide data mining and independent statistical analysis under Section 3553(a)(6), but instead

---

[3] For that reason, the government does not submit the sentencing table in felony Capitol siege cases where the Sentencing Guidelines apply.

through the Guidelines themselves, which has a detailed system to account for a defendant's criminal history. *See* U.S.S.G. § 4A1.1-1.3.

Fourth, Sections 111 and 231 capture a broad array of conduct, and simply knowing a defendant's sentence in another district devoid of any context about the underlying conduct will not be instructive.[4] Section 3553(a)(6)'s focus on defendants who "have been *found guilty* of similar conduct" suggests that sentencing courts should compare defendants convicted of the same offenses, not simply defendants who may have been charged with similar or the same offenses but who ultimately were "found guilty" of different offenses. Although unwarranted disparities may "result when the court relies on things like alienage, race, and sex to differentiate sentence terms," a sentencing disparity between defendants whose differences arise from "legitimate considerations" such as a "difference[] in types of charges" is not unwarranted. *United States v. Bridgewater*, 950 F.3d 928, 936 (7th Cir. 2020). But when a defendant charged with Offense A is "found guilty" of and sentenced on Offense B (but not Offense A), that defendant no longer bears sufficient similarity under Section 3553(a)(6) to require comparison to another defendant convicted under Offense A.

Comparing Capitol siege defendants convicted under Sections 111 and 231 to defendants charged with, but not convicted of, those offenses in other districts is particularly problematic. Among the permissible considerations in deciding whether and how to prosecute a particular case are "the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan."

---

[4] Indeed, even in the limited number of Capitol siege cases that have proceeded to sentencing for violations of Section 111, the sentences have varied from 6 months to 120 months. The variation is a function of the fact that different offense and offender characteristics resulted in substantially different applicable Sentencing Guidelines, *not* unwarranted sentencing disparities among Capitol siege defendants.

7

*Armstrong*, 517 U.S. at 466 (quoting *Wayte v. United States*, 470 U.S. 598, 607 (1985)). None of those prosecutorial decisions, which enjoy a "presumption of regularity," is publicly available, and "in the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their duties." *Id.* at 464. Because this information about charging is both publicly unavailable and within the Executive Branch's "broad discretion to enforce the Nation's criminal laws," *id.*, it is not susceptible to comparison with how the government has prosecuted other cases. Relatedly, the sentencing recommendation that the government makes—which reflect various considerations, some specific to the defendant, and others related to the nature of the offense—is not readily comparable between cases. No case (to the government's knowledge) has found an unwarranted sentencing disparity based on a comparison between defendants charged with the same offenses but convicted of different offenses or based on a difference in government sentencing recommendations between two putatively similar cases.

## CONCLUSION

The government submits Attachment One in response to the Order. For the reasons set forth above, the government respectfully requests that the Court modify the Order to eliminate the requirement that the government gather and report data regarding the government's sentencing recommendations in each case.

    Respectfully submitted,

    MATTHEW M. GRAVES
    UNITED STATES ATTORNEY
    D.C. Bar No. 481052

    BY:   /s/
    KIMBERLY L. PASCHALL
    Assistant United States Attorney
    National Security Section
    D.C. Bar No. 1015665

601 D Street, N.W.,
Washington, D.C. 20530
202-252-2650
Kimberly.Paschall@usdoj.gov

9